# Gulf Compress Co., *et al.* v. Jones Cotton Co.

### *Bill for Discovery.*

(Decided June 30, 1908.  47 South. 251.)

1. *Discovery; Equity; Law.*—The statutes providing for discovery in law do not preclude resort to a court of equity to obtain discovery.

2. *Same; Parties.*—A bill for discovery and other relief may join as parties respondent the officers of the respondent corporations, though no relief is prayed against them beyond a discovery.

3. *Equity; Jurisdiction; Other Matters.*—Where equity has acquired jurisdiction for one purpose it will retain it for all purposes necessary to a complete determination and settlement of the matters involved though they be of a purely legal nature.

4. *Same; Inadequacy of Legal Remedy.*—Where it is uncertain as to whether the Compress Company or the carrier is primarily liable to the owner for cotton damaged or lost, and in what proportion the liability should be assessed if both are liable, arising from a joint traffic arrangement between the Compress Companny and the carrier, and their course of dealing under it, the remedy at law is so inadequate as to entitle the owner of the cotton to equitable relief.

5. *Same; Privity.*—Where it appeared that a carrier had no suita-. ble warehouse, platform or yard for the receipt or delivery of cotton shipped to a certain point or shipped from said point to other points, and such carrier, constructed a switch to the cotton compress warehouse, and entered into a traffic arrangement with the compress company, as to the reception of cotton, by the compress company from the carrier and the delivery of cotton to the carrier by the compress company so that one shipping cotton was enabled to surrender to the carrier the compress company's receipt, and receive the carrier's bill of lading for the cotton, such a privity is shown between the compress company and the carrier as to entitle one who has had cotton damaged or lost to equitable relief against both the compress company and the carrier.

6. *Multifariousness.*—A bill is not multifarious because it may result that one of the defendants may be shown to be liable to

[Gulf Compress Co. et al. v. Jones Cotton Co.]

plaintiff on one or more items for which the other is not and with which it is in no wise connected, the bill being for discovery and the value of cotton damaged or lost.

7. *Same; Parties.*—A carrier not a privy to the traffic arrangement between another carrier and a compress company is not a necessary party to a bill for a discovery of the value of property alleged to have been lost, although the property as routed passed over such carrier's line.

8. *Carriers; Freight; Action.*—An initial carrier is responsible alone for the loss of goods by it as such.

9. *Discovery; Equity; Waiver of Answer Under Oath.*—A bill not solely for discovery is not demurrable because waiving answer under oath.

APPEAL from Morgan Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by the Jones Cotton Company for discovery and relief against the Gulf Compress Company, the Southern Railway Company, George F. Routzler, general agent of the Gulf Compress Company, and T. J. Morrow, general agent of the Southern Railway Company at Decatur. Decree overruling demurrers to the bill, and defendants appeal, and, after severance, separately assign error. Affirmed.

The case made by the bill is that the complainant corporation is engaged in buying, selling, and shipping cotton for Eastern, Northern and foreign ports, that the Gulf Compress Company is engaged in the business of compressing and storing cotton for hire, and that the Southern Railway Company is engaged in the business of common carrier of goods and transports cotton for reward; that during the season the compress company handled from 60,000 to 100,000 bales of cotton for complainant and other firms engaged in the cotton business, and the Southern Railway Company transports at least half, it not more, of the total number of bales handled by the compress company; that the Southern Railway Company has no suitable warehouse, platform, or yard at which to deliver the cotton shipped to the various firms operating at Decatur, nor at which to receive cot-

3 R

ton shipped from Decatur by these cotton firms, and has constructed a switch track leading from its main line to defendant compress company's warehouse, and substantially all the cotton shipped over the Southern Railway from the compress company's warehouse is compressed by said company at the instance of the Southern Railway, which company pays the toll or charges for such compression, and it is to the interest of all parties concerned that cotton shipped into Decatur over the Southern Railway's line be delivered to the said cotton firm at the warehouse of the compress company, and this course of business has obtained between orator and the other cotton firms at this point and these defendants for several years; that during the month of December, 1906, and May, 1907, orator stored with the Gulf Compress Company a lot of cotton totaling 104 bales, for which the compress company issued to orator warehouse receipts. The receipts is here set out in the bill. It is alleged that said receipts did not express on their face the condition in which the cotton was at the time it was received by the compress company; that orator, according to the usual custom, classified and marked 54 bales of said cotton "O. S. T.," and classified and marked 50 bales of said cotton "E. W. L." It is then averred that orator contracted with the Proximity Manufacturing Company, of Greensboro, N. C., to deliver in good condition, freight prepaid, a large lot of cotton, and likewise had a contract with O. P. Heath & Co., of Charlotte, N. C., for 50 bales of cotton on the same terms; that in pursuance thereof orator surrendered to the Gulf Compress Company its warehouse receipts for 54 bales of cotton in return for which the Gulf Compress Company issued to orator compress receipt for 54 bales of cotton, to be compressed and loaded as stipulated in the bill of lading, and also surrendered to the compress company its warehouse receipt for the 50 bales of cotton, to be com-

pressed and loaded for Charlotte, N. C., in return for which the Gulf Compress Company issued to orator its compress receipt of the same tenor as the one above set out.

Paragraph 4 of the bill avers that the compress company and the Southern Railway Company have entered into some kind of contract or agreement, which contract or agreement comprehends some traffic arrangement relating to the reception of cotton by the Gulf Compress company at Decatur and the delivery of cotton to the Southern Railway by the Gulf Compress Company, and that the terms of the contract are unknown to orator; but orator states on information and belief that the terms of such contract will be material in fastening the liability for the damage sustained by orator as hereinafter set forth upon the Gulf Compress Company or the Southern Railway Company, and that orator has no means of discovering the contents of said contract, except it be discovered in and by this case. By reason of said contract or agreement between the Gulf Compress Company and the Southern Railway Company orator was enabled on the 8th and 13th days of May, respectively, to surrender to the Southern Railway Company the Compress receipts last referred to, which it did, and to receive from the Southern Railway Company its bills of lading, dated, respectively, the 8th and 13th days of May, for 50 bales of cotton, marked "E. L. W.," stipulating the weight, subject to corrections, and consigned "to order O. P. Heath & Co., Charlotte, N. C.," and acknowledging the prepayment of freight to destination, and bill of lading for 54 bales of cotton, marked "O. S. T.," consigned "to order notify Proximity Manufacturing Company, Greensboro, N. C.," and acknowledging prepayment of freight to destination; that the Southern Railway Company allowed the cotton to re-

main in the hands of the Gulf Compress Company until the 26th day of June, 1907, upon which date it was in part loaded to be transported to the consignees in said bill of lading.

Paragraph 5 alleges that between the time of the delivery of the 104 bales of cotton to the Gulf Compress Company and its transportation by the Southern Railway Company, and while in the actual possession of the compress company, it was seriously damaged by becoming wet and being allowed to so remain, in consequence of which it was rotten and decayed. After orator had delivered the compress receipts to the Southern Railway and received the railway's bill of lading as above set out, said lots of cotton were packed and reconditioned by the Gulf Compress Company; that is, the bales of cotton were unbound and torn loose, and the damaged portions thereof removed, after which the cotton was again repacked, and that at some time of which orator is not informed 9 bales of the cotton marked "O. S. T.," were lost, converted, or damaged altogether, and were never loaded upon the cars of the railway company to be transported as consigned, and of the lot of 50 bales marked "E. W. L.," 7 bales were lost, converted, or damaged altogether, and never loaded for transportation as per bill of lading. Then follows an allegation of the reduction in weight, the price of cotton at that time, and the loss to orator. It is also alleged that orator was unable to comply with his contract with the manufacturers, except by going into market and purchasing cotton to supply the place of the lost and damaged cotton, and that the market had advanced 2 cents per pound, making his losses from that source alone over $300. Other bills of lading were set out for cotton of different brands, and the same allegations were made in reference thereto, except as to the amount of pounds and number

of bales, as is made with reference to the two lots set out. It is alleged, further, that orator is not advised of the exact time when the cotton was damaged or lost, whether while in the hands of the compress company as orator's bailee, or while in the hands of the compress company as agent of the railroad, but avers on its information and belief that it occurred partly during both periods.

It is then alleged that orator and the defendant compress company and railroad company have had the following course of dealings under which they have been engaged in business: That when cotton is consigned to orator from the various places and the surrounding territory it is transported over the Southern Railway Company's track and over its switch track onto the premises of the compress company, where it is received by an unloading clerk, an agent of the compress company, who receives an abstract of the cotton loaded in each car, which abstract is furnished by the Southern Railway Company, and which abstract is then copied on the books of the compress company, and the original or copy of the abstract is signed by the said unloading clerk and returned to the Southern Railway Company. The said abstract shows the number of bales received from each car, as well as the marks on each bale, and also refers to the waybill in the possession of the railway, which is an instrument sent out by an agent of the railway company from the station from which the cotton is forwarded to the agent of the railway company at Decatur, and ordinarily shows the number of bales of cotton, together with the marks and bale number, shipped in each car. The cotton so received by the compress company is then tagged, which tag contains orator's name, as well as number. The number indicates the total number of bales which orator at that time has had

stored with the compress company during that cotton
season. During the continuance of this course of busi-
ness the defendant railway company has received for
shipment, consigned to orator at Decatur, Ala., various
consignments of cotton from the following consignors
on the following day: (Here follows the number of
shipments, together with statement of cotton lost out of
each shipment, together with allegations that orator
has gone to great trouble and made diligent inquiry to
ascertain the whereabouts of the missing cotton, and
has been unable to do so.) It is also alleged in this con-
nection that several shipments were made over the
Northern Alabama Ralway Company as the initial car-
rier out of which cotton has been lost. It is alleged
that the Southern Railway Company is the regular con-
necting line between Decatur and the line of the North-
ern Alabama Railway Company, and that, while the
two are separate entities, they have traffic arrange-
ments, and their freight business in north Alabama and
other features of their railway business are under one
general control. It is averred, in the alternative, that
the cotton was received by the Northern Alabama Rail-
way Company and by it delivered to the Southern Rail-
way Company, a connecting carrier. It is then aver-
red that orator is not informed as to where or how the
cotton was lost or destroyed, and as to who is primarily
liable therefor, whether the compress company or the
Southern Railway Company, and that the losses occur-
red out of different consignments at different times;
but it is averred that the private books and records kept
by each of these companies ought to show whether the
missing cotton has been delivered by the railroad to the
compress company, and which of these companies is
primarily liable for the loss of said cotton, and that the
production of the record making such disclosure is

material and indispensable to its obtaining the proper evidence, so as to place the responsibility equitably upon the defendants, as well as to enable it to recover for the value of its cotton, and orator has no means of procuring this evidence, except through defendant or his agent in charge of said records.

The prayer is for a discovery, and, upon ascertaining who is primarily liable, that the court do equity and fix the liability and ascertain the damages that each should pay to orator, etc. Attached to the bill were a lot of interrigatories, addressed to the respondents and their agents, who are parties to the bill. The footnote to the bill requires an answer to the several paragraphs of the bill, as well as to the interrogatories, but oath is waived, except as to the answer to the interrogatories.

The demurrers filed by the Gulf Compress Company are: That there is no equity in the bill, as under the facts alleged complainant has a complete and adequate remedy at law. (2) It fails to allege that the discovery desired can be obtained only through the answer of these defendants to the bill of complaint. (3) It fails to allege clearly and distinctly that complainant is unable to procure the evidence desired by other testimony. (4) It sets up no independent grounds of equitable relief, and the discovery sought is a mere pretext, and because the bill on its face shows that, if it is good it is only for discovery, and not for relief. (5) Because it shows on its face that complainant knows that it has a claim against this defendant, and also a claim against the Southern Railway Company, and that said claims were separate and distinct, and complainant is seeking evidence to apportion the respective liabilities of these defendants to complainant, and no equitable ground is stated in the bill authorizing complainant to do so, nor is there any reason in law shown why this bill should

be maintained in order for complainant to apportion its damages between these respondents, and no reason in law is shown why these defendants should be sued jointly and their respective liabilities apportioned in this suit. (6) It is a fishing bill, in so far as it seeks to find out which one of defendants is liable to complainant for loss or damage to complainant's property

Similar demurrers were interposed by other respondents, respectively, with the additional ground that the bill was multifarious, that there is a misjoinder of parties respondent, that no reason is shown why the individual agents of the corporations should be joined as parties respondent, and for a nonjoinder of the Northern Alabama Railway Company as a party respondent. The case was submitted on these various demurrers, and on a motion to dismiss for want of equity, all of which were overruled.

BROWN & KYLE, and HUMES & SPEAKE, for appellant. Upon reason and authority the bill is without equity.— *Ex parte Boyd*, 105 U. S. 647; Storey's Eq. Jur. sec. 1495; *Brown v. McDonald*, 130 Fed. 964; *Safford v. Ensign Mfg. Co.*, (C. C. A.) 120 Fed. 480; *London, etc. Co. v. Doyle*, 130 Fed. 719.

CALLAHAN & HARRIS, for appellee.

DOWDELL, J.—The appeal in this case is taken from the decree of the chancellor overruling the demurrers of the several respondents to the bill and the motion of the respondent the Southern Railway Company to dismiss the bill for want of equity. There is much force in the argument of counsel for appellants on the proposition that, since by our statutes courts of law are enabled to compel discovery in actions brought in those courts, the necessity for a resort to a court of equity for

such purpose no longer exists. Bills purely for discovery having originated in the theory of assisting a court of law, it would seem logical that when this aid was no longer needed the ground of equity jurisdiction would fail. If the case was one of first impression, the writer of this opinion would be inclined to adopt the views advanced in argument of counsel. But this question was gone over in a recent case by this court (*Nixon v. Clear Creek Lumber Co.*, 150 Ala. 602, 43 South. 805, 9 L. R. A. [N. S.] 1255), in which the decision was adverse to the contention here made. That case is decisive of the case at bar on the question of jurisdiction for discovery, as well as on several other questions here raised by the demurrers. It was there decided that joining of the officers of the respondent corporations as defendants was permissible and proper, although no relief was prayed against them beyond a discovery, citing 1 Pomeroy's Eq. Jur. p. 194, § 199, to which may be added 2 Story's Eq. Jur. p. 714, § 1501. The court, then, having acquired jurisdiction for one purpose, will assume it for all needful purposes to a complete determination and settlement of the matters involved in the controversy, though they be of a purely legal nature. This is a well-established rule of equity jurisprudence, requiring no citation of authority.

The bill, however, apart from that of discovery, we think, on the facts stated, is not without equity. As succinctly stated by the chancellor in ruling upon the motion and demurrers the bill shows an uncertainty and confusion as to which one of the respondents, the Gulf Compress Company or the Southern Railway Company, is primarily liable to the complainant for its alleged loss, or in what proportion the liability should be assessed against them, if both are liable, which is the result of their joint traffic arrangement and their con-

duct under and in pursuance of such traffic arrangement. The allegations of the bill also make a case of privity between said respondents as to the alleged liability to the complainant.—*Nixon v. Clear Creek Lumber Co.*, 123 Ala. 365, 26 South. 225; *Mississippi Cotton Compress Co. v. Levi*, 83 Miss. 774, 36 South. 281; 1 Pomeroy's Equity Jur. (3d Ed.) § 186; *Fuller v. Insurance Companies* (C. C.) 36 Fed. 469, 1 L. R. A. 801. The fact that on an accounting it may result that one of the respondents may be shown to be liable to the complainant on one or more items for which the other respondent is not, and with which such other respondent is in no wise connected, will not serve to render the bill multifarious in such case as this. In *Adams v. Jones*, 68 Ala. 117-119, it was said by this court: "Multifariousness, abstractly, has been properly said to be incapable of an accurate definition, but is generally unstood to include those cases where a party is brought as a defendant on the record, with a large portion of which, and in the case made by which, he has no connection whatever." Story's Equity Pl. § 530; *Kennedy's Heirs v. Kennedy's Heirs*, 2 Ala. 573. "The objection is greatly a matter of discretion, and so the circumstances under which it is allowed to prevail; so that every case must, in a measure, be governed by what is convenient and equitable under its own peculiar facts, subject to the recognized principles of equity jurisprudence. And it is always proper to exercise this discretion in such manner as to discourage future litigation about the same subject-matter, and prevent a multiplicity of suits, and never so as to do plain violence to the maxim that 'courts of equity delight to do justice, and not by halves.' No universal rule in regard to multifariousness can be, or has been, attempted to be established, as covering all possible cases." Story's Eq. Pl. §§ 72, 284, 530, 531;

[Howell v. Henry.]

Adams Eq. pp. 309-311; 1 Brick Dig. p. 719, § 158 et seq.

The bill is not subject to demurrer for the nonjoinder of the Northern Alabama Railway Company as a party respondent. While it might have been joined as a proper party, it is not shown to be a necessary party. It was not a privy to the traffic arrangements between the Gulf Compress Company and the Southern Railway Company. Moreover, for any loss of cotton by it as an initial carrier it was alone responsible to the complainant.

The bill, not being one solely for discovery, was not subject to demurrer for waiving answer under oath.— *Palliser v. Home Telephone Co.,* 152 Ala. 44 South. 575. There are other grounds of demurrer to the interrogatories in the bill and to the prayer of the bill, but we fail to see any merit in them.

The decree appealed from will be here affirmed.

Affirmed.

TYSON, C. J., and ANDERSON and McCLELLAN, JJ., concur.