# Southern Railway Company, *et al. v.* Jones Cotton Co.

*Bill for Discovery and Accounting.*

(Decided Feb. 3, 1910.    Rehearing denied June 30, 1910.
52 South. 899.)

1. *Carriers; Goods; Agent of Carrier; Negligence.*—Where a railroad company had an arrangement with a compress company by which the railroad company issued bills of lading for a shipment of cotton on delivery to the railroad company by the owner of the cotton of the compress company's warehouse receipts, the railroad company recognized the compress company as its agent to keep the

[Southern Railway Company, et al. v. Jones Cotton Co.]

cotton pending its loading into the cars, and became responsible for the compress company's negligence therein, where a cotton company after contracting for the sale and delivery of cotton which it had delivered to the compress company, delivered the warehouse receipts of the compress company to the railroad company, and bills of lad-
.ing had issued thereon.

2. *Same; Liability for Damages.*—Where the owner of cotton de-livered to the railroad company the warehouse receipts of a compress company with which·it had cotton stored, and the railroad company accepted them, and issued bills of lading thereon to the owner, and the cotton was injured by exposure to the weather, both the railway company and the compress company were liable for the loss; the railway company because it occurred while in the hands of its agents the compress company, and the compress company because a bailee for the owner, and its liability to the owner could not be defeated by its accepting the cotton in bailment for the railroad company.

3. *Same; Damages; Right of Recovery.*—Where a cotton company delivered cotton to a compress company and subsequently delivered the compress receipts for the cotton to a railroad company and re-ceived in exchange therefor bills of lading for the cotton and shipped the cotton over railway lines to a purchaser under .a contract re-quiring that the cotton should be delivered in good condition to the purchasers mills, landed, and drafts for the purchase price with bills of lading attached were drawn by the cotton company on the pur-chasers and such drafts were honored before the cotton was deliv-ered at its destination, the cotton company was responsible for the entire shipment of cotton, and for damages to it until delivered at point of destination under the word "landed" in its contract and the right of recovery for damages to the cotton resulting from exposure to the weather while in possession of the compress company was in the cotton company although it had not been called upon to pay any of the purchase price received.

4. *Words and Phrases; Reconditioned.*—Cotton in bales is recon-ditioned by loosening the ties, removing the packing and pulling or picking the damaged part of the cotton from the bale.

5. *Damages; Destruction of Goods; Measure; Advance in Price.*—Where the action was against a carrier for damages to cotton shipped, the complainant was entitled to be reimbursed for the cot-ton destroyed, and where the bill alleged that by reason of the loss of the cotton complainant was unable to deliver according to con-tract except by furnishing other cotton which could be furnished at an advance price only, a decree which allows for the loss of cot-ton is proper even though there was no evidence that the cotton company purchased other cotton with which to replace the cotton damaged.

6. *Bailment; Termination; Delivery to Carrier.*—Where a shipper delivered cotton to a compress company and then in accordance with an arrangement between the compress company and a railroad com-pany, delivered the compress company's receipts to the ·railroad com-pany, and received bills of lading therefor, neither the contract be-tween the shipper and the railroad company for the carriage of the cotton, nor the assignment of that contract to the consignee of the cotton affected the right of the shipper to have the compress com-

pany deliver the cotton to the railroad company, and a constructive delivery to the railroad company is not sufficient to relieve the compress company of liability to the shipper.

APPEAL from Morgan Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by the Jones Cotton Company against the Southern Railway Company and the Gulf Compress Company, for a discovery and accounting, and incidentally for damages. Decree for complainants and respondents appeal. See the case of *Gulf Compress Co. et al. v. Jones Cotton Co.*, 157 Ala. 32; 47 So. 251. Modified and affirmed.

PAUL SPEAKE, for appellant Southern Railway Company, and BROWN & KYLE, for appellant Gulf Compress Company. The railroad company was liable under its bill of lading, if any liability attached.—Secs. 5546, 6133 and 6132, Code 1907. When the bill of lading was transferred to the consignee, the legal title passed out of the Jones Cotton Company and into the assignee.— *L. & N. R. R. Co. v. Algood*, 113 Ala. 164; *Haas & Co. v. City Bank*, 144 Ala. 562; *Tishomingo Sav. I. v. Johnson*, 40 So. 503. There was not sufficient evidence of Walton's authority to sign and no legal evidence that he did sign abstract 239.—*Gibson v. Trowbridge Co.* Besides, Jones Cotton Company knew that the cotton did not weigh what it originally weighed and that there were nine bales short in one lot and seven in another. This knowledge is shown by Walton's testimony, as he was representing and acting for the Jones Cotton Company.—*Jasper T. Co. v. K. C. M. & B.*, 99 Ala. 416; *Thompson v. A. M. Ry. Co.*, 122 Ala. 378; *A. G. S. v. Commonwealth Co.*, 146 Ala. 388. Besides, the persons injured are not suing. Besides this, the complainant failed to prove the allegations of the bill upon which its

equity depends so far as the Gulf Compress Company is concerned.—*Gulf Compress Company v. Jones Cotton Co.,* 47 South. 254.

CALLAHAN & HARRIS, for appellee. Under the contract the risk of transportation was on the Jones Cotton Company, the title of the cotton was in it until the cotton was landed, and the Jones Cotton Company is responsible to the consignee for the damage, and is the proper party to bring this suit.—*L. & N. v. Algood,* 113 Ala. 163; *Capehardt v. Furman,* 103 Ala. 671; *Roberson v. Pogue,* 86 Ala. 257. Counsel discuss other assignments of error, but without citation of authority.

SAYRE, J.—When this case was here on a former occasion (157 Ala. 32, 47 South. 251) the equity and frame of the bill were settled in favor of the complainant. The present appeal raises only the question of the liability of the defendants for certain items charged against them in the decree. First, then, with reference to the two lots of cotton, 54 bales were marked "O. S. T.," and 50 marked "E. W. L." The decree was that the Southern Railway Company should respond to the complainant for the actual loss in weight sustained by this cotton while in the possession of the Gulf Compress Company as the agent of the said railway company, and that the Gulf Compress Company was liable for the diminution in value of 34 bales of the "O. S. T." cotton, and 21 bales of the "E. W. L." cotton on account of its being reconditioned and repacked while in storage with the compress company. This cotton had been stored by the cotton company with the compress company. The railway company had an arrangement with the compress company, evidenced by formal writing, by which, on delivery to it by the owner of warehouse receipts issued

by the compress company, it issued bills of lading for the shipment of cotton whenever occasion arose. The compress company agreed to keep all cotton insured for the benefit of the railway company after the issuance of such bills of lading and until it should be loaded in the cars of the railway company, and to hold the railway company harmless against any damage which such cotton might sustain while in its possession pending shipment. The cotton company having contracted for the sale and delivery of the cotton in controversy to purchasers in North Carolina, and with the railway company for its transportation thither, delivered its warehouse receipts to the railway company and received bills of lading for the cotton. Thereby the railway company recognized the compress company as its agent to keep the cotton pending its loading into the cars and became responsible for the compress company's negligence therein.

Between the time when the railway issued its bills of lading and the time when the cotton was loaded on the cars for transportation to the consignees a considerable period elapsed, the delay in shipment being caused in part at least by the fact that when the compress company tendered the cotton to the railway company, it was found to have been damaged by exposure to the weather so that the railway company refused to receive it from the compress company. This made it necessary for the cotton to be reconditioned and in part repacked. Cotton is "reconditioned" by loosening the ties, removing the bagging, and pulling or picking the damaged part of it from the outside of the bale. Where the bales are much reduced by this process, as we gather, the reduced bales are combined into new bales by repacking. Mere repacking injures the quality of the cotton put into the repacked bales and affects its value in the market. The

chancellor evidently found that the cotton had suffered damage by exposure to the weather subsequent to the issue of the bills of lading. The testimony has been closely scrutinized, and we find no sufficient reason to challenge the correctness of that conclusion. The re-conditioning and repacking were also done subsequent to the issue of the bills of lading by the railway company, and most certainly account for the loss in weight of the two lots. The processes here mentioned, after the cotton had been damaged by exposure, did not cause further damage to the cotton as a whole, but were re-sorted to, and had the effect, beyond doubt, to increase the value of the cotton as a whole although it diminish-ed the value per pound of so much of it as was put into the repacked bales. But the loss in weight of the entire lot, and the loss of value in the cotton repacked together represent the total loss suffered by the cotton, and these elements of loss must alike be referred to its damage by exposure as its proximate cause. For this loss the defendants were both liable to the complainant, the rail-way company for the reason already indicated, the com-press company for the reason that it was bailee for the complainant, and by accepting bailment from the rail-way company could not defeat the rights of the true owner. The defendants were jointly liable to the com-plainant for the entire loss to the cotton, and a decree might well have been made against them both for the entire amount of the loss, though there could be, of course, one satisfaction only. Neither appellant is in a position to complain of a decree the error of which con-sists in charging each appellant with a lesser sum than its liability as measured by law. The appellee has con-tented itself with the decree in its present shape.

It is denied by appellants that the right of recovery resides in the cotton company. This denial is grounded

upon the fact, itself not denied by appellee, that drafts with bills of lading attached were drawn by appellee company on the consignees and honored by payment before the cotton was delivered at its destination. These drafts were for the stipulated price of the cotton estimated at its original weight and quality. The cotton company does not appear in the evidence to have been called on for restitution of any part of the sum realized from the drafts. Prima facie the delivery of a bill of lading by the consignor to the consignee operates as a transfer of title in the goods shipped, and an action against the carrier for loss or damage while in its possession will lie only at the suit of the consignee; but if the consignee is not in fact the owner and the goods while in transit are at the risk of the consignor, the right of action resides in the latter.—*Louisville & Nashville R. R. Co. v. Allgood,* 113 Ala. 163, 20 South. 986. Any proper rule must require that the suit be brought by the party at whose risk the goods are while in course of transportation. The evidence shows without dispute or contrary inference that the contract of purchase required that the cotton should be delivered in good condition to the mills in North Carolina "landed." In the terminology of the trade, "landed" meant that the consignor was responsible for the cotton and for damages to it until delivered at the point of destination, meaning, of course, delivery at destination of the entire shipment in the stipulated condition. The appellant Gulf Compress Company contends that the cotton shipped was landed. And so some of it was in a way, but appellant will hardly contend that the cotton destroyed and cast away while in its hands, aggregating approximately 16 bales, was landed in any sense, or that the remainder was landed as it ought to have been. Thus the railroad company continued to be the agent of the consignor for

the cotton at the time of the loss, as it had been constituted in the beginning by the bill of lading in which plaintiff was both consignor and consignee, and with this status payment and delivery of the bills of lading were not inconsistent. This fact brings the complainant within the reason of the rule, and establishes its right to maintain this bill. It is no concern to the appellant companies that the complainant has a sum of money which in equity and good conscience belongs to the consignees, if that be the case. That is an equity which concerns the consignees only; nor is there a necessary dependence between it and the legal right in controversy. Certainly the right of complainant to recover against the compress company as its bailee not for the carriage, but for care, cannot be affected by equities which have arisen between complainant and the mill owners although they have arisen out of dealings in the identical cotton.

The argument that there was a variance between allegation and proof is based upon a misconception of the record. We quote the allegation of the third paragraph of the bill: "And orator avers that it had entered into a contract to sell a large number of bales of cotton to the Proximity Manufacturing Company of Greensboro, N. C., under which contract it was obligated to deliver said cotton in good condition 'landed,' which term signified, and is so understood by persons dealing in cotton, that your orator was to deliver the cotton to the said Proximity Manufacturing Company on the ground at Greensboro, N. C." The same contract is alleged in respect to the shipment to O. P. Heath & Co., of Charlotte, N. C. The testimony of the witness Wall supported the contract alleged, and that without dispute.

Complaint is further made of the decree that there was a failure of proof to establish it in part at least in

this: The bill alleged, in substance, that by reason of the loss of the cotton, complainant was unable to deliver according to contract except by furnishing other cotton which could be purchased at an advanced price only. The bill seeks to make this the basis of a recovery of the difference between the contract price and the advanced price of cotton to replace that destroyed. It is said that there is no evidence in the record that complainant purchased other cotton with which to replace the cotton destroyed. But it occurs to us that, whether so or not, complainant is entitled to be reimbursed for the cotton destroyed, while as to the further loss occasioned by the advance in price, no relief was decreed.

The compress company cannot complain that liability was fastened upon the railroad company by secondary evidence of the contract between complainant and the North Carolina parties, if that was the case. The compress company was charged as complainant's bailee, as we have already indicated, not for carriage, but as a warehouseman. We think there can be no sufficient reason for holding that by its contract with the railroad company for carriage, or by the assignment of that contract to the North Carolina parties, the complainant company lost the right to have the compress company deliver the cotton to the railroad company for carriage in amount and condition as when received by the compress company. Nor did a constructive delivery to the railroad company meet the ends to be served by an actual delivery. It charged the railroad company, but did not relieve the compress company. The result obtained by the decree was in accordance with the theory of the bill, the proof, and the principles of equity. The briefs disclose a recurrence to the idea, advanced when this cause was here on the former appeal, that different causes of action against different defendants are joined

in the decree. But that was discussed and decided on that appeal satisfactory to the court, and we will not again go into it. The railroad company has not complained of the character of the evidence offered. The compress company has no reason to complain.

Appellant compress company was erroneously charged with one of the two bales of cotton referred to in evidence as "M. 131" and "W. 18." We think that one of these two bales was traced into the possession of the compress company, while the other was not, but we are unable to say from the evidence in the record with reasonable satisfaction which one. In this state of the proof the least valuable bale must be charged against the compress company. Its value must, of course, be proved before the register.

The chancellor's decree of reference will be corrected so far as to direct the register to charge the least valuable of the two bales marked "M. 131" and "W. 18" against the compress company, and, as corrected, will be affirmed.

The costs of this appeal will be taxed against the appellants equally. We cannot anticipate that other costs will not be properly taxed in the chancery court. As yet no decree for costs has been made there.

Affirmed.

DOWDELL, C. J., and McCLELLAN and MAYFIELD, JJ., concur.