147 So. 421

## LOUISVILLE & N. R. CO. v. CULLMAN WAREHOUSE, Inc.

### 6 Div. 165.

Supreme Court of Alabama.

March 9, 1933.

Rehearing Denied April 20, 1933.

494

Eyster & Eyster, of Decatur, St. John & St. John and Griffith & Griffith, all of Cullman, and Steiner, Crum & Weil, of Montgomery, for appellant.

: Earney Bland, of Cullman, and A. J. Harris, of Decatur, for appellee.

GARDNER, Justice.

This litigation arose out of a written contract entered .into between the Louisville & Nashville Railroad Company and the Cullman Warehouse, Inc., presumably for their mutual benefit and convenience—the salient features of which appear in the report of the case.

Under this contract the advantage to the warehouse company was the granted privilege of loading on the cars at its own plant, and sealed with its own seal, freight destined for shipment over the Louisville & Nashville Railroad, and the issuance by the railroad of bills of lading on the faith of the representations of the warehouse company as to the goods, wares, and merchandise so loaded.

■ The second paragraph of the contract contains the indemnity clause upon which the plaintiff here relies, and was, as contended by counsel for plaintiff, intended not only as an indemnity against actual loss, but against liability as well. 14 R. C. L. 56; Faulkner v. McHenry, 235 Pa. 298, 83 A. 827, Ann. Cas. 1913D, 1152–1154. But, even applying the rule that all fair doubts are to be resolved in favor of the party indemnified (Alabama Fidelity & Casualty Co. v. Ala. Penny Savings Bank, 200 Ala. 337, 76 So. 103; Eureka Coal Co. v. L. & N. R. R. Co., 219 Ala. 287, 122 So. 169), the indemnity here clearly intended was not against a mere claim or demand but only against an accrued liability, or, to use the wording of the parties, against such demands "accruing against the railroad company." In the interstate shipment of which complaint is here made, there was a claimed shortage of 40 bales of cotton, the railroad having, on the representation of the warehouse company, issued its bill of lading for 197 bales and made delivery to the consignee of only 157.

It is manifest, therefore,: that, to fix liability against the warehouse company in the instant case, the railroad must show some accrued liability, as distinguished from a mere claim or demand against it on account of such shortage, and, if the railroad has paid the claim of the consignee, when in fact no legal liability existed, this would in no manner affect the liability of the warehouse company under the contract. And, indeed, we infer from the brief of plaintiff's counsel that this construction of the contract is in harmony with their own, as the brief states, "the purpose and intention of the parties in the contract was to make the warehouse company liable to the railroad company to the same extent as the railroad was liable to shippers." The question of prime importance, therefore,

is whether or not the complaint discloses a liability of the railroad accruing to the Cotton Stabilization Corporation, the consignee named in the bill of lading.

█ It does not appear from the complaint whether or not the 40 bales of cotton were in fact loaded on the cars. If so loaded and lost in transit, the liability resting upon the railroad therefor would of course be wholly aside from the contract here considered, and the warehouse company would have no concern therewith. The right or privilege of the warehouse company to load the cars and procure the bills of lading was for its own convenience and advantage, and it is upon the bill of lading thus secured by the warehouse company that the consignee receives the freight so shipped. It would appear, therefore, that in thus loading the cars the warehouse company was acting on behalf of the shipper and as the shipper's agent.

Plaintiff's counsel cited Arthur v. Texas & P. R. Co., 204 U. S. 505, 27 S. Ct. 338, 51 L. Ed. 594, and Southern Railway v. Jones, 167 Ala. 578, 52 So. 899, in support of the statement that the warehouse company was the agent of the railroad. We are persuaded, however, the facts and circumstances considered in these authorities readily distinguish them from the instant case, and they are without application here.

█ But these considerations aside, the controlling factor in the determination of the question here presented is that the Cotton Stabilization Corporation was both the consignee and consignor. A bill of lading is of a twofold character, a receipt and a contract to carry and deliver. As a receipt it is open to contradiction. Wayland's Adm'r v. Mosely, 5 Ala. 431, 39 Am. Dec. 335. But a bill of lading may contain the constituent elements of an estoppel, and thus become something more than a contract between the carrier and shipper, as illustrated by the following extract from the text of 10 Corpus Juris, 195: "It usually is intended to constitute a representative of the goods, and stands for them, so that a transfer of the bill is a transfer of the goods themselves; and therefore when the carrier issues a bill of lading containing a statement as to the quantity of goods received, with the understanding that the goods may be transferred by means of a transfer of the bill of lading, the transferee is justified in relying on the representations of the carrier made in the bill with reference to the quantity of goods received under it, and as to one who receives the bill in good faith, relying on the statement of quantity, and pays a consideration, the carrier is estopped from showing that it has not received the quantity of goods recited in the bill. But the right of the consignee or transferee to rely on the recitals of the bill of lading in this respect depends on his having paid consideration by reason of recitals in the bill itself.

Nor does the estoppel apply to a case where the owner of the property did not purchase it while it was in the hands of the carrier, and therefore did not take title to it through the bill of lading, but the shipment was made by its agent, or where the bill of lading which was for a car shipment of cotton seed showed on its face that the bags were loaded and counted only by the consignor."

█ The complaint contains nothing indicating that the Cotton Stabilization Corporation was a purchaser in good faith, or paid any consideration or assumed any liability on account of the recitals contained in the bill of lading, or acquired title to the property thereby or in any manner altered its position or parted with anything of value in reliance upon its recitals. There is therefore no room for the application of the principle of estoppel. If the 40 bales of cotton were not in fact delivered to the railroad, the Stabilization Corporation is to look to the warehouse company to account therefor, and not the railroad. The Stabilization Corporation was the shipper, and it cannot be successfully contended that a shipper has the right to recover of the carrier for the loss of property which in fact was never delivered to the carrier, though the bill of lading may recite its receipt.

As we read the brief, counsel for plaintiff do not controvert this statement of the rule, but they insist it has been changed by federal statute. "Bills of Lading Act," as found in 49 USCA p. 388 et seq. Section 82, 49 USCA, provides that a bill of lading in which it is stated that the goods are consigned or destined to a specified person is a straight bill. It is therefore argued that the bill of lading to the Stabilization Corporation comes within that definition, and that section 102, 49 USCA, is here of controlling influence as disclosing a fixed liability against the railroad on account of the shortage of which the Stabilization Corporation complained.

That section reads as follows: "If a bill of lading has been issued by a carrier or on his behalf by an agent or employee the scope of whose actual or apparent authority includes the receiving of goods and issuing bills of lading therefor for transportation in commerce among the several States and with foreign nations, the carrier shall be liable to (a) the owner of goods covered by a straight bill subject to existing right of stoppage in transitu or (b) the holder of an order bill, who has given value in good faith, relying upon the description therein of the goods, for damages caused by the nonreceipt by the carrier of all or part of the goods or their failure to correspond with the description thereof in the bill at the time of its issue."

But this statute was clearly intended only as a modification of the rule recognized in Friedlander v. Texas-Pac. R. Co., 130 U. S. 416, 9 S. Ct. 570, 32 L. Ed. 991, and that of

our own case of L. & N. R. R. Co. v. National Park Bank, 188 Ala. 109, 65 So. 1003, wherein it was held that a bill of lading, fraudulently issued by a station agent of a railroad company, without receiving the goods named in it for transportation, but in other respects according to the customary course of business, imposed no liability upon the company to an innocent holder who receives it without knowledge or notice of the fraud and for a valuable consideration. The purpose of the statute to so change this rule was expressed by the court in Gleason v. Seaboard Rwy., 278 U. S. 349, 49 S. Ct. 161, 162, 73 L. Ed. 415, as follows: "The rule, applied in that case [referring to the Friedlander Case, supra], that the authority of an agent to issue bills of lading is impliedly conditioned upon the receipt of the merchandise described in the bill, has now been modified by statute. Section 22 of the Federal Bills of Lading Act, 39 Stat. 542 (49 USCA § 102), applicable to bills of lading of common carriers in interstate and foreign commerce, provides that the carrier, in certain enumerated cases, shall be liable on a bill so issued even though the merchandise is not received by the agent. * * * Section 22 deals only with the former rule that agents having authority to receive merchandise and issue bills of lading were without implied authority to issue the latter except on receipt of the merchandise. It enlarged the agent's implied authority by imposing a new liability on the principal for the agent's act in issuing the bill, even though the merchandise was not received." Authorities cited are to like effect: Chicago & N. W. R. Co. v. Bewsher (C. C. A.) 6 F.(2d) 947, 953; In re The Carso (D. C.) 43 F.(2d) 736, 744.

Reverting for the moment to the Friedlander Case, supra, it is noted an innocent holder, for a valuable consideration of the bill of lading, was there involved, and so in our case of L. & N. R. R. Co. v. National Park Bank, supra. The language of the court construing the statute is to be considered in the light of the former holding, and the change intended was for the protection of one who in reliance upon the recitals of the bill of lading had acquired the same for value or the property represented thereby, or otherwise altered his position to his detriment by reason thereof, and that as to one thus situated the statute had "enlarged the agent's implied authority by imposing a new liability on the principal for the agent's act in issuing the bill, even though the merchandise was not received."

We do not consider that the statute is subject to the construction contended for that in every case and under all circumstances the railroad company would be estopped by the recitals of the bill of lading as to the receipt of the merchandise, but only so where damages have been sustained.

It has no application to the situation presented by this complaint where the shipper was both the consignor and consignee, and acquired no peculiar rights or property on account of the recitals in the bill of lading. Indeed, in the statute itself, speaking of the extent of liability, the language is, "for damages caused." If the Stabilization Corporation delivered only 157 bales of cotton to the railroad, and received that number at the point of destination, then it has suffered no damage by way of any claimed shortage, though the bill of lading mistakably recited the receipt of 197 bales.

Plaintiff's counsel argue that under the contract the warehouse company became liable as an absolute insurer for the quantity of cotton represented by it to the railroad company under its loading certificate, but this insistence is based upon the further contention that "this was the liability of the railroad company under its bill of lading." We cannot agree that such was the liability of the railroad company to the Stabilization Corporation, for, as previously stated, if the Stabilization Corporation did not deliver the 40 bales to the railroad, being both consignee and consignor, and suffering no damage on account of the recitals of the bill of lading, then no liability against it had accrued. The construction contended for by plaintiff would extend the meaning and effect of the statute beyond the scope of its language and beyond its effect as construed in the Gleason Case, supra.

We consider further discussion unnecessary. Our conclusion is the amended complaint was subject to demurrer, and the trial court correctly ruled.

Let the judgment be affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.