[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 14, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14850

_____

D.C. Docket No. 01-00437-CV-BE-S & 01-01904-CV-BE-

THE LLOYD NOLAND FOUNDATION, INC.,
an Alabama nonprofit corporation,

                                        Plaintiff,

versus

TENET HEALTHCARE CORPORATION, a corporation,

                                        Defendant-Appellant-
                                        Third Party Plaintiff-
                                        Counter-Defendant,

versus

CITY OF FAIRFIELD HEALTHCARE AUTHORITY,

                                        Third Party Defendant-
                                        Counter-Claimant,

HEALTHSOUTH CORPORATION,

                                        Third Party Defendant-
                                        Appellee.

Appeal from the United States District Court
for the Northern District of Alabama

**(May 14, 2008)**

Before BLACK, CARNES, and COX, Circuit Judges.

PER CURIAM:

## I. OVERVIEW

Tenet Healthcare Corporation ("Tenet") challenges the district court's order granting HealthSouth Corporation ("HealthSouth") summary judgment and dismissing with prejudice Tenet's third-party complaint against HealthSouth.

## II. BACKGROUND

This case involves claims, counter-claims, and third-party claims arising out of a series of transactions related to the sale and operation of a hospital in Fairfield, Alabama. In 1996, Lloyd Noland Foundation, Inc. ("LNF") sold the hospital to Tenet.[1] As part of the deal, LNF reserved an option to repurchase hospital beds ("the

---

[1] A subsidiary of Tenet actually purchased the hospital, but this distinction is not relevant for the purposes of this appeal.

LNF beds")[2] from Tenet and required Tenet to assume certain responsibilities related to a retiree medical discount program ("the LNF retiree medical discount program").[3]

In 1999, the City of Fairfield Healthcare Authority ("Fairfield") purchased the hospital from Tenet. Fairfield assumed the obligations described above that Tenet owed to LNF ("the Assumed Obligations"). Fairfield financed the purchase by executing a Promissory Note ("the Note"), payable to Tenet on or before May 15, 2000, and Fairfield executed a Security Agreement with Tenet. HealthSouth guaranteed Fairfield's payment of the Note through a Guaranty Agreement with Tenet. HealthSouth's Guaranty Agreement did not include an indemnity agreement.

Fairfield did not pay the Note when it became due. As a result, in May 2000, Tenet, Fairfield, and HealthSouth signed an Agreement Regarding Amendment of Secured Promissory Note ("the Agreement Regarding Amendment"). The Agreement Regarding Amendment gave Fairfield and HealthSouth six additional months in which to pay the Note. The Agreement Regarding Amendment contained the following indemnity provision ("the Indemnity Provision"):

---

[2]LNF reserved the right to repurchase 120 hospital beds "and the corresponding right to provide hospital services therewith" from Tenet for $1.00. (R.1-84 Ex. H.)

[3]Tenet assumed the administration of the LNF retiree medical discount program. LNF, however, remained responsible for reimbursing Tenet for the value of the retiree services rendered, up to an annual threshold of $150,000 per program participant. (R.1-84 Ex. H.)

> 6. Indemnification Obligation: The Authority [Fairfield] and Guarantor [HealthSouth] shall jointly and severally indemnify Payee [Tenet] for any loss, damage, expenses or costs (including attorneys fees) incurred by Payee that are attributable to any claim by [LNF], based on acts or a failure to act by the Authority [Fairfield] and/or Guarantor [HealthSouth] after [November 15, 1999] with respect to the "LNF Beds" as such term is used in Schedule 1.7(f) to the Asset Sale Agreement and/or the [LNF LNF retiree medical discount program], referenced in Schedule 1.7(f).

(R.1-81 Ex. F ¶ 6.) The Indemnity Provision contained no expiration date.

Fairfield did not pay the Note by the due date set forth in the Agreement Regarding Amendment. So, HealthSouth, as Guarantor, paid the Note in full. In a letter dated January 8, 2001, Tenet acknowledged "payment in full" of the Note. (R.1-81 Ex. I). This letter did not mention the Indemnity Provision.

On February 16, 2001, LNF sued Tenet in the Northern District of Alabama for damages, alleging that it had failed to perform the Assumed Obligations. On March 7, Tenet wrote HealthSouth, again acknowledging payment of the Note. It sent HealthSouth both the original Note (marked "PAID IN FULL") and the original Agreement Regarding Amendment. (R.1-81 Ex. J.) In its cover letter, Tenet asserted that the Indemnity Provision remained in effect. On May 2, Tenet formally demanded indemnity from Fairfield and HealthSouth pursuant to the Indemnity Provision, but neither agreed to indemnify Tenet against LNF's claims. So, Tenet filed a third-party complaint in the LNF suit against both Fairfield and HealthSouth, claiming the right

4

to indemnity under the terms of the Indemnity Provision. Both Fairfield and HealthSouth argued that the Indemnity Provision expired when HealthSouth paid the Note in full. Tenet contended that the Indemnity Provision remained in effect.

Tenet, Fairfield, and HealthSouth filed motions for summary judgment on Tenet's contractual indemnification claim. The district court granted Fairfield's and HealthSouth's motions for summary judgment on November 9, 2004, holding that the terms of the Indemnity Provision contained an implied expiration date and expired when the Note was satisfied.

Tenet moved the district court under Fed. R. Civ. P. 54(b) for entry of partial final judgment on the summary judgment order. The district court granted Tenet's motion. Tenet appealed to this court. We dismissed the appeal for lack of jurisdiction on April 4, 2007, because there was no "final judgment" that the district court could properly certify under Rule 54(b). *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773 (11th Cir. 2007).[4]

On remand, the district court modified its previous summary judgment opinion and order. (R.2-197.) But, it did not modify its holding that both Fairfield and HealthSouth were entitled to summary judgment on Tenet's contractual

---

[4]There was no final judgment that could be certified because Tenet had alleged a common law indemnification claim which the district court had not ruled on; we instructed the district court to determine whether Tenet alleged this claim against Fairfield, HealthSouth, or both.

5

indemnification claim. The court explained that Tenet's common law indemnification claim was against Fairfield only. So, the district court's revised summary judgment order resolved the only claim against HealthSouth and one of the two claims against Fairfield. The court dismissed the action against HealthSouth with prejudice.

Tenet again moved the district court under Fed. R. Civ. P. 54(b) for entry of partial final judgment, this time only as to HealthSouth. The district court granted this motion. (R.2-206.) Tenet appeals the district court's grant of HealthSouth's motion for summary judgment and its prejudicial dismissal of Tenet's third-party complaint against HealthSouth for contractual indemnification.

### III.  STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo.  Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. *Huff v. DeKalb County*, 516 F.3d 1273, 1277 (11th Cir. 2008).

### IV.  DISCUSSION

This appeal presents a matter of contract interpretation under Alabama law. Under Alabama law, indemnity agreements between private parties are generally valid. "[I]f the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnity the other,

6

including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld." *Indus. Tile, Inc. v. Stewart*, 388 So. 2d 171, 176 (Ala. 1980).

HealthSouth contends that the district court properly held that the Indemnity Provision expired upon payment of the Note because the Indemnity Provision contained no clear survival language. Tenet argues that the Indemnity Provision survives payment of the Note because the Indemnity Provision contained no durational term and was never expressly revoked.

The district court stated, "In construing the Agreement Regarding Amendment as a whole, the court finds that, as a matter of law, the indemnity provision in the Agreement is unambiguous as to its duration and expired upon payment of the Note." (R.2-197 at 8.) We discern no justification for this breathtaking conclusion. In fact, the district court itself, by the end of its opinion, seemed to be wavering on this point: "[T]he remaining provisions in the Agreement and in other documents . . . *impliedly* establish that the indemnity provision expired upon payment of the Note . . . ." (Id. at 14) (emphasis added). The Indemnity Provision contained no termination date. A termination date cannot be unambiguously mandated by silence. If the parties desired to provide a termination date, they would have unambiguously done so.

The district court also stated that the Indemnity Provision was "curiously mute" as to its duration. We find nothing "curious" about the Indemnity Provision's silence as to its duration. Indeed, it is very common for an indemnity provision not to include an expiration date. A party could bargain for an explicit expiration date for an indemnity obligation, but that clearly did not happen here.

Tenet and HealthSouth are referred to as "Payee" and "Guarantor," respectively, throughout the Agreement Regarding Amendment. The district court noted that the Indemnity Provision's reference to Tenet as "Payee" and HealthSouth as "Guarantor" indicated that the Indemnity Provision was linked to the Note and expired when the Note was paid. We disagree; the terms "Payee" and "Guarantor" appear to have been used merely for convenience.[5] And, we doubt that these terms present an ambiguity. "A contractual provision is ambiguous if it is reasonably susceptible to more than one meaning." *FabArc Steel Supply, Inc. v. Composite Constr. Sys.*, 914 So. 2d 344, 357 (Ala. 2005). To the extent that these terms present any ambiguity in the Indemnity Provision, Tenet argues that Alabama law dictates

---

[5]The dissent asserts that our conclusion that the parties used the terms "Payee" and "Guarantor" simply for convenience "has no support in the record, or elsewhere," post at ___. We disagree. The reality is that nothing in our record, except the context in which the terms were used, supports either our conclusion or the dissent's conclusion as to why these terms were used. Support for our conclusion lies in "the whole context of the agreement." *See King v. Capitol Amusement Co.*, 130 So. 799, 799 (Ala. 1930). And, we suggest that the dissent's conclusion that these sophisticated parties used the terms "Payee" and "Guarantor" as a back-handed way to fix a termination date for the Indemnity Provision is an extraordinary conclusion.

8

that the Indemnity Provision should be construed in its favor. *See Louisville & N. R. Co. v. Cullman Warehouse, Inc.*, 147 So. 421, 423 (Ala. 1933) ("[A]ll fair doubts are to be resolved in favor of the party indemnified."); *Ala. Fidelity and Cas. Ins. Co. v. Ala. Penny Savings Bank*, 76 So. 103, 107-08 (1917) ("[T]he rule is that in the interpretation or construction of contracts of this character all fair doubts are to be resolved in favor of the party indemnified . . . ."). HealthSouth, however, contends that any ambiguous language should be construed against Tenet, under the doctrine of *contra preferentum*, since Tenet drafted the Indemnity Provision. *See Royal Ins. Co. of Am. v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1042 (11th Cir. 2001) ("[a]mbiguous language in an indemnity agreement is construed against the drafter."). However, the Alabama Supreme Court recognizes an exception to this general rule: "Where both parties to a contract are sophisticated business persons advised by counsel and the contract is a product of negotiations at arm's length between the parties, we find no reason to automatically construe ambiguities in the contract against the drafter." *Western Sling & Cable Co. v. Hamilton*, 545 So. 2d 29, 32 (Ala. 1989). Both Tenet and HealthSouth are sophisticated and were fully advised by counsel. We see no reason to construe any ambiguity in HealthSouth's favor. Any ambiguity presented by the terms "Payee" and "Guarantor" is resolved by examination of the language of the Indemnity Provision and its context.

9

The district court held that the Indemnity Provision expired upon payment of the Note because it "appears in the context of an agreement to extend by six months the duration of . . . the Note." (R.2-197 at 11.) This is not dispositive of the issue of whether the Indemnity Provision survives payment of the Note, nor is it even helpful. The presence of the Indemnity Provision in a document purporting to amend the Note does not by itself suggest that the Indemnity Provision was tied to, or even related to the Note. The Indemnity Provision is found in a separate paragraph in the Agreement Regarding Amendment. The Indemnity Provision did not mention, much less modify, the Note, the Guaranty Agreement or the Security Agreement. And, the Agreement Regarding Amendment, by its terms, dealt with matters other than the Note: "The [parties] desire to enter into this Agreement to set forth their agreement to amend the Note with respect to the proposed extension, *and to address certain other matters related thereto*." (R.1-81 Ex. F ¶ D) (emphasis added). The Indemnity Provision, which on its face bears no relationship to HealthSouth's and Fairfield's obligation to satisfy the Note, was one of these "other matters related thereto" that the Agreement Regarding Amendment purported to address.

Finally, the district court supports its holding by pointing out that, since the parties agree that the indemnity clause of the Security Agreement[6] (which contained no explicit termination date) expired upon payment of the Note, the Indemnity Provision must also have expired at the same time. (R.2-197 at 14.) The Security Agreement secured payment of a debt that was discharged upon payment of the Note. It is not remarkable that the Security Agreement's indemnity clause, which related solely to the collateral, likewise expired upon payment of the Note. It is also not remarkable that the parties would agree to this. Despite the dissent's insistence that "[t]here is no sound reason for believing that silence about expiration meant one thing in one agreement and exactly the opposite thing in another agreement," post at ___, the expiration of the Security Agreement's indemnity clause is simply irrelevant to the expiration of the Indemnity Provision.

Tenet argues that Alabama law, expressed in *Black Diamond Coal Mining Co. v. USX Corp.*, 581 So. 2d 839 (Ala. 1991), dictates that a contractual indemnity agreement with no termination provision survives the performance of an underlying contract. While *Black Diamond* dealt with the performance of a services contract that

---

[6]"To the extent not prohibited by applicable law which cannot be waived, Debtor [Fairfield] shall indemnity and hold Secured Party [Tenet] harmless from and against any and all claims, damages, losses, liabilities or judgments which may be incurred or sustained by or asserted against Secured Party, directly or indirectly, in connection with the existence or exercise of any of the rights of Secured Party with respect to the Collateral." (R.1-84 Ex. C ¶ 1.3.)

11

led to a hazardous condition, it stands for the general principle—consistent with our decision today—that an indemnity agreement with no explicit termination provision continues to remain in effect, notwithstanding the fact that the parties no longer have any other contractual relationship.

HealthSouth argues that Tenet released it from all contractual obligations by marking the Note "PAID IN FULL" and returning the Agreement Regarding Amendment. But these actions demonstrate only that the Note had been paid in full, and say nothing about Fairfield's and HealthSouth's continuing indemnity obligation.

The language of the Indemnity Provision itself suggests that it will remain in force indefinitely: "The Authority [Fairfield] and Guarantor [HealthSouth] shall jointly and severally indemnify Payee [Tenet] for *any* loss, damage, expenses or costs (including attorneys fees) incurred by Payee that are attributable to *any* claim by [LNF] . . . ." (R.1-81 Ex. F ¶ 6) (emphasis added). This language implies no time limitation on the extent of Fairfield's and HealthSouth's indemnity obligation with respect to the LNF beds or the LNF retiree medical discount program. Nothing in the Indemnity Provision explicitly ties it to any other document or agreement among the parties. Further, the Indemnity Provision specifically contemplates a beginning date. It is silent as to a termination date.

Fairfield's and HealthSouth's indemnity liabilities with respect to the LNF's claims against Tenet were triggered by a contingency completely unrelated to the independent promise, memorialized in the Note, to pay money—that is, liability regarding the LNF beds or the LNF retiree medical discount program. It is apparent why Tenet desired indemnification from HealthSouth and Fairfield: once it sold the hospital, it no longer wanted to be liable to LNF with respect to LNF beds or the LNF retiree medical discount program. The purpose of the Indemnity Provision was for Tenet to be indemnified by Fairfield and HealthSouth at all times—before and after the Note was satisfied—for claims regarding the LNF beds and the LNF retiree medical discount program. The reason Tenet desired indemnity is still present and is unrelated to the Note. And, we are unable to discern any reason why Tenet would want this indemnity to be in effect for only six months until the date the Note was due to be paid.[7] Nothing in the record suggests that any losses as a result of claims regarding the LNF beds or the LNF retiree medical discount program would be incurred by Tenet within six months. Fairfield and HealthSouth were free to bargain

---

[7]The intent of the parties is relevant in our analysis to determine the duration of the Indemnity Provision. *See Charles H. McCauley Assocs., Inc. v. Snook*, 339 So.2d 1011, 1015 (Ala. 1976) ("Along with the provisions of the contract, the conduct and relations of the parties and the subject matter may also be used in construing the contract to ascertain the intention of the parties."); *King*, 130 So. at 799 ("It is a well-settled principle that the intention of the parties, which courts seek to discover in construing a contract, is to be gathered, not from particular words and phrases, but from the whole context of the agreement.").

for an agreement that the Indemnity Provision would expire at a time certain. They did not do so.

Tenet would not have had any indemnity agreement with regard to claims regarding the LNF beds or the LNF retiree medical discount program if it had not bargained for the Indemnity Provision. We know of no reason why a payee, like Tenet, who agrees to extend the deadline for payment of a Note, cannot bargain for an unrelated indemnity agreement as consideration for the extension. That is precisely what happened here.

## V. CONCLUSION

The district court improperly granted summary judgment to HealthSouth. The judgment dismissing Tenet's third-party complaint against HealthSouth with prejudice is vacated, and the grant of summary judgment in HeathSouth's favor is reversed.

**REVERSED.**

CARNES, Circuit Judge, dissenting:

The district court concluded that HealthSouth's indemnity obligation that was part of the note amendment was not everlasting, but instead expired when the note that it was part of was paid off. The majority concludes to the contrary. The district court is right; the majority is wrong.

The agreements between these parties relating to the sale of the hospital contain two other indemnity provisions. One of them, the one that was part of the asset sale agreement, specified that the indemnity obligation in it was to last "forever." That shows the parties knew how to make an indemnification agreement outlast the note when they intended to do so. They chose to the make the obligation that was part of the asset sale agreement last "forever," but chose not to make the obligation that was part of the note amendment last forever.

The second of the two other indemnification provisions was in the security agreement. That provision, like the note amendment indemnity provision before us, did not specify when it was to expire. Nonetheless, Tenet conceded in the district court that the indemnity provision in the security agreement was intended to expire when the note was paid off. There is no sound reason for believing that silence about expiration meant one thing in one agreement and exactly the opposite thing in another agreement.

15

There is also the fact that the parties chose to put the indemnity provision in question into a six-month extension of the note, instead of making it a separate, freestanding provision that would live beyond the life of the note as extended. These were sophisticated parties represented by sophisticated attorneys engaging in a sophisticated transaction. There were at least half a dozen different agreements and documents that were part of the overall transaction. Certainly the parties and their attorneys were not shy about producing paper. If they had intended the indemnity provision to be de-linked from the six-month note extension, they could have accomplished that by making it a separate document. Instead, they chose to put the provision into an agreement that would last only six months.

Finally, in the indemnity provision at issue in this case, HealthSouth is referred to as "Guarantor." That term is specific to its role as guarantor of Fairfield's obligation to pay off the note in favor of Tenet. Once the note was paid off, HealthSouth was no longer the guarantor. By using that term, the parties signaled their intent that the indemnity obligation would last only as long as HealthSouth remained the guarantor. Once its role as guarantor of the note payments was over—when the six-month extension expired and the note was paid off—its role as indemnitor was over too. The majority opinion asserts without any support in the record, or elsewhere, that the parties used the terms "Guarantor" and "Payee" simply

16

for convenience. To the contrary, if convenience were the motivation the parties could simply have referred to themselves as "HealthSouth" and "Tenet." The inconvenient truth is that "Guarantor" and "Payee" have meaning.

Instead of reversing the district court's grant of summary judgment to HealthSouth, we should affirm it.