[Southern Express Company v. Armstead.]

# Southern Express Company v. Armstead.

### Action against Common Carrier for Loss of Goods.

1. *Liability of common carrier for loss of goods.* — If an express company deposits goods on the platform of the railroad depot at the place of destination, without delivering them to the consignee, or placing them in the custody of any person, this is gross negligence, and renders the company liable as a common carrier for their loss; although the company's agent, to whom they were tendered by the consignor's messenger for shipment, at first declined to receive them, because the company had no agent at the place of destination, and was not allowed to use the depot of the railroad company; and although the shipping agent, in signing the receipt, added the words " owner's risk," but *without the knowledge or consent of* the consignor; and although the consignee, when he ordered the goods to be forwarded by the express company, knew that the company had no agent at the place of destination, and he had lately received goods forwarded by it under receipts containing the same added words.

2. *Limitation of carrier's liability by stipulation in printed receipt.* — A common carrier cannot limit his liability for the loss of goods, by a stipulation in a printed receipt that he will not be liable beyond a specified sum.

3. *When consignee may sue for loss of goods.* — The consignee of goods may maintain an action against a common carrier for their loss, although another person was the owner of them, or was jointly interested in them with him.

APPEAL from the Circuit Court of Hale.
Tried before the Hon. M. J. SAFFOLD.

W. & J. WEBB, for appellant.

COLEMAN & SEAY, *contra.*

B. F. SAFFOLD, J. — The appellee claimed damages of the appellant, as a common carrier, on account of the loss of certain goods through its carelessness. The evidence was, in substance, as follows: M. Meyer & Co., merchants in Selma, sent to the express company's office, by a drayman of their house, a box of goods, and a blank receipt for the same, to be signed by the company. The drayman returned with the box and receipt unsigned, saying the agent refused to take the box. A clerk of the house then accompanied the drayman to the express office, to see what he could accomplish. He was told by Warren, an agent of the company, that Wamble, the agent of carriage, had refused to take the box, because the railroad agent at Newbern, the place of destination of the goods, would not suffer his company to deposit goods in that depot. The clerk said, the box must go; whereupon Warren wrote on the back of the receipt, " Wamble, please take this." The drayman carried the box, and the receipt, to the railroad depot in Selma, where Wamble received the box, and signed the receipt, writing across its face the words " owner's risk." The box was promptly carried to Newbern, and left on the platform

[Southern Express Company v. Armstead.]

of the depot; Wamble calling the attention of the depot-agent to it as the property of the plaintiff, to whom it was consigned. Between that time and its reception by the plaintiff, it was broken open and rifled. Both the consignors and the consignee knew that the defendant had no agent at Newbern; and the latter had, about the same time, received other goods by the same means, at " owner's risk." The goods were sent to him through the defendant, at his own request, though he had been told by the railroad agent at Newbern not to do so, for he would not suffer them to come into his depot. The court charged the jury, that if they believed the evidence they must find for the plaintiff; and this charge is assigned as error.

There was certainly no express contract made, because the receipt sent by Meyer & Co. was not signed by the defendant, as they presented it; nor did they accept it with the stipulation of " owner's risk," imposed by the defendant's agent. It was proved that the drayman had no authority to contract for Meyer & Co. about the carriage; nor Warren to give orders to Wamble; and that no contract was made between Warren and the clerk of Meyer & Co. No implied contract can be presumed, because the instances of carriage of goods for this plaintiff at owner's risk were too recent to establish against him consent. Depositing the goods upon the platform of the railroad depot, in the custody of nobody, was gross carelessness. As it was done without agreement with the plaintiff, either express or implied, the charge of the court was correct.

2. The limitation of the consignee's right to recover to fifty dollars, when the value of the property described is not stated by the shipper at the time of shipment, and specified in the receipt, as expressed in the receipt given in evidence, cannot be considered, as no receipt was given in this case. But if it could be, such a claim on the part of the appellant is untenable. In *Railroad Company* v. *Manufacturing Co.* (16 Wall. 318), it was said, that it was " against the policy of the law and a serious injury to commerce to allow the carrier to say that the shipper of merchandise assents to the terms proposed in a notice, whether it be general to the public, or special to a particular person, merely because he does not express dissent from them. If the parties were on an equality in their dealings with each other, there might be some show of reason for assuming acquiescence from silence; but, in the nature of the case, this equality does not exist; and, therefore, every intendment should be made in favor of the shipper, when he takes a receipt for his property, with restrictive conditions annexed, and says nothing, that he intends to rely upon the law for the security of his rights."

In this case, the limitation was expressed in the body of the

[Rattary v. Cook.]

receipt ; but the receipt was a printed one, and appears to have been such as was generally used by the appellant, without reference to the nature or value of the goods received. When such a limitation of liability is indiscriminately made, whether the goods be of great value, and put up in small compass, or of large bulk, and of value visibly beyond the limitation, no presumption of assent can, or ought to be indulged. It is more than questionable, whether the law will permit a common carrier to make such a stipulation, except in a case where the shipper expressly agrees to it after being informed of some sufficient reason why the carrier is not compelled to carry the goods. *South. Express Co.* v. *Caperton*, 44 Ala. 101 ; *R. R. Co.* v. *Manufacturing Co.*, supra.

3. The consignee of goods has a right to sue for their loss by the carrier, notwithstanding another party may be the owner of them. The obligation is to deliver to him. Generally, the property vests in him by the mere delivery to the carrier. Although the absolute or general owner of personal property may support an action for any injury thereto, if he have the right of immediate possession, this does not necessarily divest the right of the consignee to sue, notwithstanding he has never had the actual possession. 1 Chit. Plead. 6, 61, 153 ; *Everett* v. *Saltus*, 15 Wend. 474. Therefore, whether Mrs. Tinker was a joint owner of the goods with the plaintiff, or owned some interest in them, was not, alone, a material inquiry. An affirmative answer to the questions excluded would rather, in connection with the other evidence, have strengthened the plaintiff's cause. There was no error in excluding the questions.

The judgment is affirmed.