# Robinson & Ledyard *v.* Pogue & Son.

*Statutory Detinue for Goods, by Vendor against Sub-Purchaser.*

| 86 | 257 |
| 97 | 516 |
| 86 | 257 |
| 113 | 168 |
| 86 | 257 |
| 126 | 253 |
| 86 | 257 |
| e142 | 485 |

1. *Sale of goods; when title passes to purchaser.*—On a sale of goods, which are forwarded by railroad consigned to the purchaser, the title at once passes to him, although the bill of lading is sent by mail to the seller's agent, by whom the contract was made in the city of the purchaser's residence, and is never delivered, being retained until the money should be paid; and the purchaser, having received the goods, may transfer to a *bona fide* sub-purchaser a title which will prevail against the seller.

2. *Offer to rescind, unaccepted.*—An offer to rescind by the purchaser, unaccepted, or his declaration to the seller's agent, before the receipt of the goods, that he did not want them, to which no reply was made, does not amount to a rescission, nor impair the title of the purchaser.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by E. H. Pogue & Son, merchants and partners, doing business in North Carolina, against the appellants, a partnership doing business in Montgomery, to recover several boxes of tobacco; and was commenced on the 18th December, 1885. The tobacco, which was 340 lbs. in weight, was the third and last installment of a lot of 1,000 lbs. sold by plaintiffs, or contracted to be sold, to Rushton & Co., merchants in Montgomery, in July, 1885; the other installments not being involved in the suit. The contract was made by plaintiffs' agents in Montgomery, J. Simon & Brother. Said Simon testified, on the part of the plaintiffs, that before making the contract, on the 25th July, he went to the "R. G. Dun Commercial Agency" in Montgomery," to ascertain the standing and financial condition of Rushton & Co., "and made the sale of the tobacco relying on the statement" shown by the books of said agency; that in the fall of 1885, before the last installment of the tobacco was forwarded by plaintiffs, Rushton "told him that he did not want any more tobacco, and not to ship the last installment." The defendants objected to this statement as evidence, and excepted to its admission. The witness testified, also, that he received the bill of lading for the tobacco from plaintiffs, by mail,

[Robinson & Ledyard v. Pogue & Son.]

about the 7th or 8th December, and immediately informed Rushton of the fact, "who answered, that he did not want the tobacco;" and this evidence was admitted by the court, against the objection and exception of the defendants. The tobacco was forwarded by railroad by plaintiffs, consigned to Rushton & Co.; and Simon testified, that the words, "Shipped to Rushton & Co., Montgomery," were written on the bill of lading which he received. The bill of lading was never delivered to Rushton & Co., but was retained by Simon & Bro.; the witness testifying that, "at the time of the negotiations between him and Rushton touching the sale of the tobacco, it was agreed that Simon & Bro. were to retain the bill of lading until each installment was paid." The tobacco "was delivered by the railroad company, without the production of the bill of lading, nor was the bill of sale shown;" but it was not shown when, or to whom, the tobacco was delivered. On the 16th December, 1885, the defendants bought out the entire stock of goods of Rushton & Co., with outstanding notes and accounts, in payment of a debt for moneys previously loaned and advanced, amounting to $9,000; and the validity of this purchase was not impeached. They immediately took an inventory of the goods, and removed them to their own warehouse, the tobacco here sued for being a part; and the writ in this suit was levied on the tobacco on the next day. "Said Rushton testified, that in the sale to defendants he did not sell, nor intend to sell, any goods which did not belong to Rushton & Co."

The court charged the jury, among other things, as follows: "If the jury believe from all the evidence that the plaintiffs, by sending the bill of lading to Simon & Bro. with the bill for the goods, intended that the title should not pass until Simon delivered the bill of lading to Rushton & Co., then the plaintiffs would be entitled to recover."

The defendants excepted to this charge, and also to the refusal of several charges asked by them in writing, among which were the following: (3.) "The delivery of the tobacco to the carrier, consigned to Rushton & Co., would pass the title to the tobacco to Rushton & Co., even though the bill of lading was sent to Simon & Bro., in the absence of proof that the bill of lading was not to be delivered to Rushton & Co., except upon payment, or performance of some other act or duty on their part." (4.) "If the jury believe from the evidence that the tobacco was delivered to

[Robinson & Ledyard v. Pogue & Son.]

the railroad company, and the bill of lading was made consigning the goods to Rushton & Co.; then the title to the goods passed by this delivery to Rushton & Co., although the bill of lading was sent to Simon & Bro., in the absence of proof that the contract of sale required the performance of something on the part of Rushton & Co., before the goods were delivered."

The charge given, the refusal of each of the charges asked, and several rulings on evidence to which exceptions were reserved, are now assigned as error.

TOMPKINS, LONDON & TROY, for appellant, cited *McCormick v. Joseph & Anderson*, 77 Ala. 236; *Pilgreen v. State*, 71 Ala. 368; *People v. Haynes*, 28 Amer. Dec. 530; *Jones v. Sims*, 6 Porter, 138.

RICE & WILEY, *contra*, cited Benjamin on Sales, vol. 1, § 580; 4 N. Y. 497; 59 N. Y. 510; 108 Mass. 291; 115 Mass. 224; 25 Ohio St. 360; 69 N. Y. 273; 25 Kans. 128.

SOMERVILLE, J.— The bill of sale from Rushton & Co. to Robinson & Ledyard, the appellants, bearing date December 16th, 1885, and transferring to them the stock of merchandise of the vendors, in absolute payment of a pre-existing debt, is the same instrument construed by us in the case of *Robinson & Ledyard v. Fairbanks & Co.*, 81 Ala. 132, and again in *Robinson & Ledyard v. Levi*, 81 Ala. 134. Upon a state of facts substantially the same as those appearing in the present record, we then observed, that there could be no question about the fact, that the defendants, if the evidence was to be believed, "were *bona fide* purchasers of the goods for value, and without notice of any alleged defect in the title of Rushton & Co., just as fully as if they had paid the cash for them." No controversy was made upon the trial raising any question as to the correctness of this ruling.

There are many assignments of error in the present record. We do not propose to notice any of these, except such as are insisted on in the brief of appellant's counsel, the others appearing to be without merit.

The main contention here insisted on, and raised by the rulings of the Circuit Court, relates to the title acquired to the goods in controversy by Rushton & Co., the consignees of the plaintiffs. If the sale of the tobacco to them was

completed by an actual or constructive delivery, and the intention of the vendors was that the title should unconditionally pass, then the appellants, Robinson & Ledyard, acquired a good title; otherwise not.

The contract for the sale of the goods was made by Simon & Bro., of Montgomery, Alabama, as agents of the plaintiffs. The shipment was made by railroad, and a bill of lading was taken in which Rushton & Co. were named as the consignees. This bill of lading was mailed to Simon Bros., with a bill for the goods, on which were written the words, "Shipped to Rushton & Co., Montgomery, Ala." It was agreed between Rushton & Co. and Simon & Bro. that the latter were to "retain the bill of lading" until the goods were paid for; but there is no evidence that the goods themselves were to be retained until the price was paid. The evidence, on the contrary, tends to prove that the sale was made on credit, after closely inquiring into the financial *status* of the consignees. The tobacco was delivered by the railroad to the consignees, without the presentation of the bill of lading.

Where goods have been sold, and are delivered by the vendor to a common carrier, consigned without reservation to the vendee, the question as to whether the title, *eo instanti*, passes to such consignee, depends upon the intention of the vendor, to be gathered from all the circumstances of the case. There is no doubt as to the correctness of the general rule, that where the bill of lading shows a consignment by the vendor to the vendee, in ordinary form, and no other circumstance appears as to the intention, the *prima facie* legal presumption is that an unconditional delivery to the consignee is contemplated. But this presumption of fact may be rebutted by evidence showing a contrary intention. *Jones v. Sims*, 6 Porter, 138 (1837); *Ezell v. English, Ib.* 307; *Emery v. Irving Nat. Bank*, 25 Ohio St. 360; s. c., 18 Amer. Rep. 299; 2 Amer. & Eng. Encyc. Law, 242; *People v. Haynes*, 14 Wend. 546; s. c., 28 Amer. Dec. 530; *Everett v. Coffin*, 6 Wend. 603; s. c., 22 Amer. Dec. 551; *Ostander v. Brown*, 15 John. 39; s. c., 8 Amer. Dec. 218, note; *American Ex. Co. v. Greenhalgh*, 80 Ill. 38. The title of the goods is commonly retained in the consignor by taking the bill of lading to his own order, or in blank, or by drawing on the consignees with the bill of lading attached to the draft, or other like procedure, indicating an intention to retain in himself a *jus disponendi* over the

goods until the price is paid, or until the happening of some other contingency.—*McCormick v. Joseph*, 77 Ala. 236; *Ala. Gr. So. R. R. Co. v. Mt. Vernon Co.*, 84 Ala. 173; *Chandler v. Sprague*, 38 Amer. Dec. pp. 417-421, NOTE; *Bank of Rochester v. Jones*, 55 Amer. Dec. 299, *note*; *Dows v. Nat. Exch. Bank*, 91 U. S. 618.

The delivery to the common carrier, in cases of the former class, is deemed *prima facie* a delivery to the consignee, not only when the consignment is made to a carrier named by the consignee, but also when made to some carrier *in the usual course of trade*, who thus becomes, impliedly, the agent of the consignee to receive and transport the goods at his risk; the sale thus becoming presumptively complete at the point of shipment, although the price is not to be paid until the goods reach their destination.—*Garbracht v. Com.*, 96 Penn. St. 449; s. c., 42 Amer. Rep. 550; *Pilgreen v. State*, 71 Ala. 368; *Sarbecker v. State*, 65 Wis. 171; s. c., 56 Amer. Rep. 624; *Hauseman v. Nye*, 62 Ind. 485; s. c., 30 Amer. Rep. 199. Hence it is commonly held, that the consignee in a bill of lading, where there is no reservation of title by the consignor, has vested in him such a property in the goods as to authorize him to sue the carrier, in his own name, for their injury, loss or recovery, in trover, detinue, or other appropriate action.—*Chandler v. Sprague*, 38 Amer. Dec.423, NOTE; *Potter v. Lansing*, 3 Ib. 310, 318, NOTE; Angell on Common Carriers, § 497; *Griffith v. Ingleden*, 9 Amer. Dec. 444; *So. Ex. Co. v. Armistead*, 50 Ala. 351; *M. & G. R. R. Co. v. Williams*, 54 Ala. 168.

Under these principles of law, the refusal of the fourth charge requested by the appellants was error. If the facts, hypothesised in this charge, were believed by the jury, the consignees could have recovered the goods from the railroad company. Hence their delivery, without presentation of the bill of lading, did not presumptively prejudice the rights of the consignees. The case presents no question whatever involving the rights of a transferree of the consignor, claiming an interest by purchase in the property as holder of the bill of lading. If the sale was on credit, and the goods were not to be retained until the price was paid, the mere retention of the bill of lading by the agent of the consignor would not prevent the sale from becoming complete.

We can not perceive that the case is affected by Rushton & Co.'s declaration made to Simon, before delivery of the goods by the railroad, that they did not want the goods; in

[Connor v. Armstrong.]

as much as there was no evidence tending to show the assent of Simon & Bro., or their principals, the consignors, to release the consignees from the purchase, or to rescind the trade.   It required the concurring assent of both contracting parties to rescind the trade, just as fully as it did originally to make it.   Neither alone could do so.   The evidence on this point was irrelevant, and should have been excluded.

The judgment is reversed, and the cause remanded.