L. E. FOSGATE COMPANY *vs.* ATLANTIC COAST LINE RAILROAD COMPANY.

Suffolk. January 5, 1928.— March 29, 1928.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Carrier*, Of goods: interstate shipment, connecting carrier. *Sale. Interstate Commerce.*

A vendor of oranges delivered them in 1923 to an interstate carrier in Florida for shipment, f.o.b. the point of shipment, received from it a "straight" bill of lading consigning them to the vendor at a diverting point in Georgia, and thereafter issued to the carrier, and the carrier received, a diversion order diverting the shipment to himself at an address in Boston in this Commonwealth, "advise" a certain merchant, directed the routes and names of carriers by which the further shipment should be made, requested an exchange bill of lading in lieu of the "straight" bill, and the next day mailed to the Boston merchant an invoice of the shipment and a delivery order directed to the last carrier's agent and authorizing delivery to the merchant on arrival of the oranges, and drew a draft on the merchant for the sale price and delivered it to a Florida bank. The merchant, receiving the order authorizing delivery to him before the shipment arrived, obtained possession of the shipment before the draft was presented, paid the freight, unloaded the car, discovered that the oranges had been damaged by reason of failure of the last carrier to observe the requirements of the interstate commerce tariff to prevent freezing, and himself brought an action against the initial carrier for the damage thus caused. *Held,* that

(1) Delivery was made rightly to the plaintiff in a representative capacity, and not as an owner who had acquired the title of the original owner of the goods or as one holding an assignment of that owner's contractual rights against the defendant which were evidenced by the bill of lading;

(2) There was no evidence of a notice given by the plaintiff or the consignor to the defendant of any transfer of the bill of lading, as required by 39 U. S. Sts. at Large, 543, and the plaintiff never became thereunder "the direct obligee of whatever obligations the carrier owed to the transferor of the bill";

(3) The fact that the bill of lading was f.o.b. the point of shipment, in the circumstances did not indicate an intention to transfer the title to the plaintiff when shipped but showed an intention that the risk of loss should fall upon the plaintiff and that the vendor reserved ownership and title as security for the payment of the drafts which were drawn concurrently for the shipment of the goods;

(4) There was no right of action in the plaintiff under the Carmack amendment to the intestate commerce act;

(5) The negligent carrier being the last carrier, there was no right of action at common law against the defendant;

(6) A finding for the defendant was proper.

CONTRACT OR TORT for damages to a shipment of oranges from Plant City in the State of Florida to Boston. Writ in the Municipal Court of the City of Boston dated January 31, 1925.

Material facts appearing at the trial in the Municipal Court are stated in the opinion. The plaintiff asked for the following rulings:

"1. Upon all the evidence the plaintiff is entitled to recover.

"2. The defendant by the acceptance of the diversion order became the initial carrier on a through shipment from Plant City to Boston as though the original bill of lading had been issued on the shipment from Plant City to Boston.

"3. The defendant is liable for the negligence in the handling of the shipment of oranges from Plant City to Boston whether such negligence occurred on its own lines or on the lines of any connecting or delivering carrier.

"4. The defendant is liable for any failure of any carrier, including itself, over whose lines the oranges were transported, to manipulate the plugs and vents as required by the weather conditions.

"5. The defendant and the connecting carriers were obliged to deliver the oranges free from any damage by freezing unless such damage could not be prevented by the exercise of the highest degree of care and foresight.

"6. The defendant and all the connecting carriers were obliged by the contract of shipment and the custom of the trade to close all vents when the outside temperature falls to 32 degrees above zero and to open all vents when outside temperature rises above 32 degrees above zero, and for failure to so close and open the vents, the defendant is liable.

"7. If the oranges were delivered in Boston chilled or frozen, it is encumbent upon the defendant to show that such chilling or freezing could not be avoided by the exercise of the highest degree of care and foresight.

"8. If the oranges arrived in a damaged condition due to freezing or chilling, it is encumbent upon the defendant to show that such damaged condition was due to causes beyond its control or beyond the control of any connecting carrier.

"9. The plaintiff is entitled to recover as damages the difference between the market prices for oranges in good condition and of good quality at the time of the arrival and the market price for oranges in the condition in which the shipment arrived.

"10. The plaintiff had the right to dispose of the oranges in such a market and in such a manner as would bring the fair market price for oranges in the condition in which the shipment arrived.

"11. The defendant as the initial carrier agreed to transport the oranges under standard ventilation and is liable not only for any defaults of itself but also for those of any connecting carrier in failing to transport under standard ventilation.

"12. Under the rules governing standard ventilation the defendant was obliged to transport the car containing the oranges with the vents and plugs closed at all times during the transit when the thermometer was below 28 degrees above zero, and if any damage resulted to the fruit from freezing at a temperature below 28 degrees, the defendant is liable in this action."

The judge granted the requests numbered 2, 3, 4 and 6; and granted request numbered 8, but ruled that the burden of proving negligence was still on the plaintiff. He denied the requests numbered 1, 5 and 7, and denied those numbered 9 and 10 as immaterial in view of his finding for defendant. He further stated that he would grant requests numbered 11 and 12 if the action were brought by the holder of the bill of lading, but ruled that the plaintiff was not such holder and that for that reason the plaintiff could not recover.

The judge found for the defendant and reported the action to the Appellate Division. The report was ordered dismissed. The plaintiff appealed.

The case was submitted on briefs.

*J. Cavanagh,* for the plaintiff.

*A. J. Santry,* for the defendant.

PIERCE, J. This case comes before this court on the appeal of the plaintiff from an order of the Appellate Division of the Municipal Court of the City of Boston, dismissing the report of a judge of that court.

The facts disclosed by the report are in substance as follows: On December 28, 1923, the plaintiff agreed to purchase a carload of oranges from W. E. Lee and Company of Plant City, Florida. The contract was made in Boston by a broker, one Shallow, who represented W. E. Lee and Company, and he gave the plaintiff a confirmation memorandum of the terms of sale. December 29, 1923, W. E. Lee and Company shipped f.o.b. from Plant City, Florida, and the defendant received for transportation, "300 Bx Oranges." The defendant then issued to "W. E. Lee & Co" a "straight" bill of lading whereby W. E. Lee and Company consigned the oranges to "W. E. Lee & Co" at "Waycross State of Ga," that being a diverting point. December 30, 1923, W. E. Lee and Company issued, and the defendant received, a diversion order, diverting the shipment to "W. E. Lee & Co., Inc., Boston, Mass. advise L. E. Fosgate Co.," and requesting an exchange bill of lading in lieu of bill of lading, and that the car be sent forward over "ACL RF&P Pa. NYNH&H."

On December 31, 1923, W. E. Lee and Company mailed

to the plaintiff direct, at Boston, an invoice of the shipment, and enclosed a delivery order, directed to the local freight agents of the New York, New Haven and Hartford Railroad Company, authorizing the delivery of the car to the plaintiff on its arrival. The invoice and delivery order were received by the plaintiff two or three days before the arrival of the car. At the time the invoice and order were sent, W. E. Lee and Company drew a draft on the plaintiff for the amount of the sale price of the oranges and delivered it to a bank at Plant City to be forwarded for payment to the plaintiff. In the ordinary course of business the draft would not be, and in fact it was not, presented to the plaintiff until after the car arrived in Boston.

The plaintiff obtained possession of the car on its arrival on January 4, 1924, on a delivery order given it by W. E. Lee and Company's agent in Boston, Shallow, and paid the freight as required by the contract. It unloaded the car and signed a delivery check to the New York, New Haven and Hartford Railroad Company, on which, before the plaintiff signed, the freight agent noted that the boxes in the ends of the car were badly chilled. The plaintiff received the bill of lading after the oranges had been delivered or disposed of. The action is in contract to recover damages resulting from the freezing of the oranges while in transportation.

The shipment was under the interstate commerce commission tariff, which required shipments of oranges to be made in ventilator cars containing vents and plugs to be operated as follows: "Close all vents when outside temperature falls to 32 degrees above zero; open all vents when outside temperature rises above 32 degrees above zero." "Cars arriving at division or terminal points with ventilators open and hatch plugs out at a minimum outside temperature of 28 degrees, or with ventilators closed and hatch plugs in at a maximum temperature of 34 degrees, will be considered as having been safely and properly handled in transit, but ventilators and plugs must be properly adjusted upon arrival and readjusted before leaving (if necessary) in accordance with the above instructions." There was evidence to warrant a finding that the vents and plugs were not closed

by the New York, New Haven and Hartford Railroad Company on the arrival of the car in Boston, or in transit between New York and Boston, that the outside temperature required the closing under the instructions, and that in consequence the oranges were frozen.

On the facts it is plain the plaintiff had no right to recover against the defendant damages for the freezing, unless it can do so under the provisions of § 20 of the interstate commerce act (34 U. S. Sts. at Large, 595) as amended by 38 U. S. Sts. at Large, 1197; 39 U. S. Sts. at Large, 539. Material portions of the so called Carmack act (§ 20 as amended) read in part as follows: "That any common carrier, railroad, or transportation company subject to the provisions of this Act receiving property for transportation from a point in one State . . . to a point in another State . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States . . . when transported on a through bill of lading." The bill of lading, a copy of which is attached to the record, bears the heading "Uniform Straight Bill of Lading" "Original — Not Negotiable." 39 U. S. Sts. at Large, 539. This sort of a bill of lading is required to bear such an indorsement (§ 6) as is defined in § 2 as follows: "That a bill in which it is stated that the goods are consigned or destined to a specified person is a straight bill." U. S. Sts. 1916, c. 415; 39 U. S. Sts. at Large, 539. A bill of lading is both a receipt and a contract of carriage and delivery. *Cunard Steamship Co. Ltd.* v. *Kelley,* 115 Fed. Rep. 678. Under § 9 of c. 415 of U. S. St. 1916, the carrier would have been justified in delivering the goods to (a) "A person lawfully entitled to the possession of the goods, or (b) . . . [to the] consignee named in a straight bill for the goods."

Here the delivery was made rightly to the plaintiff in a representative capacity, and not to it as an owner who had acquired the title of the original owner of the goods or as one holding an assignment of that owner's contractual rights

against the defendant which were evidenced by the bill of lading. The fact that the carrier could rightfully deliver the goods to the consignee, or to the plaintiff upon the order of the consignee, without the production or surrender of the bill of lading, *St. John Brothers Co.* v. *Falkson*, 237 Mass. 399, 402, is of little moment in the determination of the question whether, at the time of the breach of the contract of transportation, the plaintiff had succeeded to the rights of the holder of the bill, W. E. Lee and Company, under the provisions and within the meaning of U. S. St. 1916, c. 415, § 32 (39 U. S. Sts. at Large, 543), which reads: "That a person to whom a bill has been transferred, but not negotiated, acquires thereby as against the transferor the title to the goods, subject to the terms of any agreement with the transferor. If the bill is a straight bill such person also acquired the right to notify the carrier of the transfer to him of such bill and thereby to become the direct obligee of whatever obligations the carrier owed to the transferor of the bill immediately before the notification. Prior to the notification of the carrier by the transferor or transferee of a straight bill the title of the transferee to the goods and the right to acquire the obligation of the carrier may be defeated" in the manner set forth. "A carrier has not received notification within the meaning of this section unless an officer or agent of the carrier, the actual or apparent scope of whose duties includes action upon such a notification, has been notified; and no notification shall be effective until the officer or agent to whom it is given has had time, with the exercise of reasonable diligence, to communicate with the agent or agents having actual possession or control of the goods."

Here there is no evidence to show that the bill of lading had been received before the action was brought by the plaintiff, or when it was received other than can be inferred from the report that it was received "but it had not been received when the goods were delivered or had been disposed of," and there is no evidence whatsoever that, following the receipt of the bill of lading, the plaintiff as the transferee or W. E. Lee and Company as the transferor ever notified the carrier of the transfer. It is plain the plaintiff never became under

said § 32 "the direct obligee of whatever obligations the carrier owed to the transferor [W. E. Lee and Company] of the bill."

The fact that the bill of lading was f.o.b. Plant City, when considered with the further fact that W. E. Lee and Company, the seller, consigned the goods to "W. E. Lee & Co., Inc., Boston, Mass." does not indicate an intention to transfer the title to the plaintiff when shipped but showed an intention that the risk of loss should fall upon the plaintiff and that W. E. Lee and Company reserved ownership and title as security for the payment of the drafts which were drawn concurrently with the shipment of the goods. *Browne* v. *Hare,* 3 H. & N. 484. 1 Williston, Sales, (2 ed.) 603, 701.

It is obvious that the plaintiff had no common law right against the defendant carrier, and no right under the Carmack act to maintain an action of contract as "the direct obligee" of the obligation of the defendant which arose under the bill of lading issued to "W. E. Lee & Co., Inc." U. S. St. 1916, c. 415, § 32. The provision for notifying the plaintiff did not mean that the shipment was to be delivered without the order of the lawful holder of the bill of lading. *North* v. *Merchants & Miners' Transportation Co.* 146 Mass. 315, 319. The entry must be

*Order dismissing report affirmed.*