See also 20 F.R.D. 219.

**McDOWELL ASSOCIATES, Inc.,**
**Plaintiff,**

v.

**The PENNSYLVANIA RAILROAD,**
**Defendant.**

United States District Court
S. D. New York.
June 10, 1957.

Bigham, Englar, Jones & Houston, New York City, for plaintiff. Henry J. Bogatko, William M. Keegan, New York City, of counsel.

Bleakley, Platt, Gilchrist & Walker, New York City, for defendant. Dennis P. Donovan, Robert L. Conkling, New York City, of counsel.

SUGARMAN, District Judge.

Between November 17, 1950 and January 10, 1951 the plaintiff, McDowell Associates, Inc. (hereinafter referred to as McDowell), as consignor, shipped from Newark, N. J., 23 carloads of carpet manufacturing machinery and equipment consigned to Herbert J. Potts and/or Rhodes Wasson (hereinafter referred to as Potts and Wasson), agents, at Greenville, Mississippi. It is claimed that the contents of 13 of the carloads were damaged to the extent of $530,974.97.

While these shipments were being made, and on or about December 15, 1950, Alexander Smith, Incorporated, successor to Alexander Smith & Sons Carpet Company (hereinafter referred to as Smith), a New York corporation, caused a Delaware corporaton, Greenville Mills, Inc. (hereinafter referred to as Greenville) to be formed. Before the termination of the shipments, and on or about December 28, 1950, Smith sold to Greenville all of the machinery and equipment involved in the shipments. On February 15, 1951, Smith entered into an agreement with McDowell outlining and confirming "our previous verbal understanding concerning the several matters related to the machinery and equipment being handled at the Newark warehouse and machinery and equipment previously shipped by you, or to be shipped by you * * *." That agreement recited that Smith had billed McDowell "at fair market prices" for the said machinery; that McDowell would rebill the machinery upon Smith's demand at the same prices originally billed by Smith to McDowell; that McDowell would insure the machinery as Smith might direct, the cost thereof to be borne by Smith; that if the machinery were damaged Smith would accept the damaged machinery plus any amounts received from insurance companies or carriers for such damage "in full liquidation of the billing prices for each such specific damaged

piece of machinery"; that McDowell would not suffer any loss occasioned by such damage; that all charges for "storage, shipment, insurance, etc., including handling, labor, boxing, crating, shoring and all materials related to such activities," would be billed to Smith by McDowell at least monthly; that for its services McDowell was to receive a "reasonable overhead rate" in addition to the charges for labor, handling, etc.

Sometime subsequent to the last shipment, claim for the damage was presented on behalf of McDowell, Smith, Potts and Wasson which, on June 5, 1951, defendant denied in writing.

On January 16, 1952, Smith and Greenville assigned to McDowell any and all claims which they had for damage to the machinery. On January 22, 1952, McDowell executed an insurance loan receipt to William H. McGee & Co., Inc., managers of the Sun Insurance Office, Ltd., for $250,000, repayable "only to the extent of any net recovery we may make from any carrier, bailee or from any other person, firm or corporation * * *" for damage to the machinery shipped as aforesaid. On January 24, 1952, Potts and Wasson likewise assigned to McDowell any and all claims which they or either of them had for damage to the said machinery.

On May 19, 1952, McDowell commenced an action in this court to recover $530,974.97 damages. After mesne proceedings and on March 8, 1957, McDowell filed its second amended complaint. On March 22, 1957, the defendant answered the second amended complaint, in which answer it interposed eleven defenses.

McDowell now moves to strike out the fifth through tenth inclusive of those defenses, upon the grounds that they are (1) sham and (2) insufficient to state legal defenses to the claims set forth in McDowell's second amended complaint.

Failing this relief, McDowell seeks that certain paragraphs of the answer be stricken as redundant, immaterial, impertinent and scandalous.

### The Fifth Defense

The essence of this defense is that when Smith removed the machinery from its Yonkers plant to the warehouse in Newark, N. J., it did so with the intention that the machinery would be transported to a new plant to be constructed in Greenville, Miss., by either Smith or Greenville; that Smith and McDowell entered into a secret arrangement for the ulterior purpose of circumventing Smith's obligations to its employees and its employees' union, whereby it was made to appear that McDowell had purchased the machinery from Smith; that as part of the secret arrangement between Smith and McDowell "artificial, fictitious, exorbitant and false values were placed on said property by" Smith; that McDowell "would act as a front" for Smith in the removal of the said property from the Yonkers plant of Smith to Newark, N. J., and thence to Greenville, Miss.; that at all times the property remained subject to the direction and control of Smith or Greenville and not of McDowell; that the property was insured by McDowell for the account and benefit of Smith; that on December 28, 1950, Smith sold the property to its wholly-owned subsidiary, Greenville, on the basis of the "artificial, fictitious, exorbitant and false values" used in the arrangement between Smith and McDowell; that McDowell undertook no risk of loss or damage to the property; that Smith, together with certain of its agents, including McDowell, Potts and Wasson, conceived and executed the scheme of filing false and fraudulent claims for loss and damage against the defendant based upon the "artificial, fictitious, exorbitant and false values" set forth in the secret arrangement between Smith and McDowell; that as part of the scheme Smith caused a claim to be filed with Sun Insurance Office, Ltd., based upon the "artificial, fictitious, exorbitant and false values"; that as part of the scheme Smith, its agents and the insurer agreed that a claim be made against the defendant based upon the "artificial, fictitious, exorbitant and

false values"; that such claim was presented on behalf of McDowell, Smith, Potts, and Wasson to the defendant and denied by the defendant on June 5, 1951; that on January 21, 1952 (the loan receipt from McDowell to McGee, as aforesaid, is dated January 22, 1952), the insurer paid McDowell a sum of money for the benefit of Smith, which sum was greatly in excess of the value of the property claimed to have been damaged and that on or about January 25, 1952, McDowell turned that money over to Smith; that as part of the scheme "and for the sole purpose of bringing this action" Wasson, Potts, Greenville and Smith assigned their right to any claim against the defendant to McDowell; that McDowell is a mere agent and not the owner of the property and not the lawful holder of the bills of lading because the secret arrangement between McDowell and Smith was not a sale or an agreement to sell; finally, that McDowell is, therefore, not a real party in interest, not entitled to recover herein and that because indispensable parties, i. e., Smith, Greenville and Sun Insurance Office, Ltd., were not joined, the action should be dismissed.

 The consignor was the plaintiff McDowell. As such McDowell is the "lawful holder" of the bills of lading and under the Carmack Amendment to the Interstate Commerce Act[1] is the proper party plaintiff.[2] If there be any doubt thereof it is dispelled by the assignments made to McDowell by Smith, Greenville, Potts and Wasson prior to the commencement of this suit by McDowell. These assignments this defendant may not attack.[3] Nor is the plaintiff's status altered by the insurance loan receipt which it gave to the insurer of the machines and equipment.[4]

The fifth defense is stricken.

### The Sixth Defense

 Based mainly upon the averments of the fifth defense, the defendant here pleads in essence that they amount to "a conspiracy to defraud" defendant. Nowhere does it appear that the evaluations placed upon the machinery by Smith and McDowell were ever represented to defendant until the claim, which defendant rejected, was made. No authority has been suggested or found to sustain this defense that one asserting an exorbitant claim, if such it be, against a bailee who does not rely thereon, is thereby deprived of the right to any recovery.

Regardless of what, if anything, McDowell, Smith, Potts, Wasson and the insurer may have connived to do, McDowell is not thereby relieved of sustaining its burden of proving the actual damage to the goods and the value thereof.

The sixth defense is stricken.

### The Seventh Defense

 Based mainly upon the averments of the fifth and sixth defenses the defendant here pleads in essence that the exorbitant evaluation of the damage contravenes the national transportation policy of the Interstate Commerce Act as amended[5] and the Act[6] itself. Inasmuch as subsections (1), (2) and (4) of § 10 cannot in any sense apply to the facts here, it must be assumed that defendant relies on subsection (3) which proscribes the obtaining of lower rates by false claims.

1. 49 U.S.C.A. § 20(11).

2. Pennsylvania R. Co. v. Olivit Bros., 1917, 243 U.S. 574, 37 S.Ct. 468, 61 L.Ed. 908.

3. Titus v. Wallick, 1939, 306 U.S. 282, 288, 59 S.Ct. 557, 83 L.Ed. 653; Kentucky River Mills v. Jackson, 6 Cir., 1953, 206 F.2d 111, 120, 47 A.L.R.2d 1331, certiorari denied 1953, 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392; Rosenblum v. Dingfelder, 2 Cir., 1940, 111 F.2d 406.

4. Hartford Fire Ins. Co. v. Commercial Union Assur. Co., D.C.S.D.N.Y.1955, 131 F.Supp. 751.

5. 54 Stat. 899, 49 U.S.C.A. note preceding section 1.

6. 49 U.S.C.A. § 10.

Defendant's reliance upon United States v. Wishnatzki[7] is misplaced. There is was said:

"What the consignees might have proved as their damages *had the claim been contested* is now immaterial. The *payment of the claim* certified by the appellant *did reduce* the compensation of the carrier for transportation below what it received at the regular established rates. A rate which can only be 'established' by computation *after deducting* lawfully made and *paid* damage claims from compensation received * * * is not a regular rate established and in force on the line of transportation." (Emphasis supplied.)

As above pointed out, defendant did not pay McDowell's, Smith's, Potts' or Wasson's claim; it rejected it. If, as the Wishnatzki case points out, the unlawful reduction in the carrier's compensation must await a payment of the exorbitant claim, assuming it to be such, the mere filing of a questionable claim does not of itself violate either the policy or letter of the act.

The seventh defense is stricken.

### The Eight Defense

[6] Based mainly upon the averments of the fifth and sixth defenses the defendant here pleads in essence that because Smith, Potts and Wasson who assigned to McDowell did not themselves commence suit within the two year and one day period from the denial of their claim filed with the defendant, as required by the bills of lading, that McDowell is barred from recovery thereon.

As was pointed out in dealing supra with the insufficiency of the fifth defense Smith, Greenville, Potts and Wasson could do with their claim as they wished and it did not lie in this defendant's mouth to challenge their assignment of it to McDowell. Having done so before suit they could no longer sue upon it. Only McDowell could and did. Nothing in the bills of lading requires the claimant to be the plaintiff. All that they provide is that "suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim." The assignments in question vest in McDowell "all right, title and interest in, of and to any and all claims which" the assignor has "against any person, firm, corporation or carrier in any way arising out of or from the loss of and damage to the contents" of the carloads of machinery, etc., with the right "to prosecute and withdraw all proceedings at law or in equity therefor."

The eighth defense is stricken.

### The Ninth Defense

[7] Based mainly upon the averments of the fifth, sixth and eighth defenses the defendant here pleads in essence that because Greenville filed no claim with defendant, suit by its assignee McDowell is barred. It not appearing that the claim filed on behalf of McDowell, Smith, Potts and Wasson failed to afford defendant full and reasonable notice of the nature and extent of the damages sought from it, this defense is without merit.[8]

The ninth defense is stricken.

### The Tenth Defense

Based upon the averments of the fifth defense the defendant here pleads in essence that the assignments to McDowell by Smith, Greenville, Potts and Wasson are void and constitute no basis of recovery by McDowell.

For the reasons ascribed in striking the fifth defense, this tenth defense is also stricken.

The first branch of plaintiff's motion to strike the fifth through tenth defenses to the second amended complaint having

---

7. 2 Cir., 1935, 77 F.2d 357, 359.

8. Delaware, L. & W. R. Co. v. United States, D.C.S.D.N.Y.1954, 123 F.Supp. 579.

been granted, it is unnecessary to consider plaintiff's prayer for alternative relief that certain paragraphs of the said answer be stricken.

It is so ordered.