115 So.2d 253

**DEARBORN STOVE COMPANY**

v.

**J. L. DEAN.**

**4 Div. 355.**

Court of Appeals of Alabama.

June 10, 1958.

Rehearing Denied Aug. 19, 1958.

Affirmed after Remandment Oct. 20, 1959.

L. A. Farmer and H. K. & J. F. Martin, Dothan, for appellant.

W. G. Hardwick, Dothan, for appellee.

CATES, Judge.

This is an appeal by the plaintiff from a judgment rendered October 25, 1956, in the Houston Circuit Court on a trial de novo in a case (on a bill of lading) brought there by certiorari from the Houston Law and Equity Court (Local Acts 1947, No. 315, approved August 13, 1947, § 9(1)), because the writ of certiorari was sought more than five days after judgment in the Law and Equity Court, Code 1940, T. 13, § 477.

Appeals from such proceedings must be brought here as provided in Code 1940, T. 7, § 1074, within thirty days after rendition of judgment, e. g., White Way Pure Milk Co. v. Alabama State Milk Control Board, 265 Ala. 660, 93 So.2d 509. Here the notice of appeal was given March 21, 1957, simultaneously with the filing of appeal bond.

The appeal not being timely, it is due to be dismissed, Donald v. Cotton States Tire & Rubber Co., 206 Ala. 88, 89 So. 296.

Appeal dismissed.

### On Remandment

Dearborn Stove's brief sets out the following as the controlling facts in evidence:

Dearborn Stove "shipped 52 cartons of gas heaters and 6 cartons of controls, amounting to $1365.06 to Watson Hardware Company, Flomaton, Alabama, to be delivered by the defendant [J. L. Dean] as a common carrier" [by motor vehicle] from Atlanta. Six "gas heaters [valued at $229.56] were not delivered."

The consignee was "Watson Hardware Co., Inc." without words of negotiability such as "or order." The bill of lading, as copied into the record before us, is, for the most part, meaningless. Hence, we can only take up the two questions raised by the ruling of the court below.

*First*, was the circuit judge entitled to bring the case to his court from the Houston Law and Equity Court via statutory certiorari?

*Second*, can the consignor of an interstate shipment maintain an action against the carrier for nondelivery without showing some special property in the goods?

This case originated in the Houston Law and Equity Court. (See Act No. 315, Local Acts 1947, p. 226, as amended by Act No. 208, General and Local Acts 1949, p. 295.) Section 9 of the 1947 Act provides that appeals in civil cases at law from the Law and Equity Court may be taken directly to this court or to the circuit court.

In the Law and Equity Court, the plaintiff, Dearborn Stove, took a default judgment, and Dean let the time for appeal expire. Code 1940, T. 13, § 477.[1] Whereupon, and within six months from date of rendition of judgment, Dean petitioned the circuit judge for statutory certiorari. The writ issued as of course.

Dearborn Stove then filed a motion to quash the writ and remand the cause to the Law and Equity Court. The circuit judge denied this motion to quash, and his ruling comprises the first assignment of error.

Under T. 13, § 477, supra, the right of appeal from the justice court and other courts to the circuit court expires after five days. Undoubtedly, to alleviate this harshness, the Legislature, by what is now T. 13, § 184, authorized circuit judges to grant writs of statutory certiorari in civil causes directed to (among others) judges of inferior courts in all cases where appeals would otherwise lie to the circuit court. See Ex parte Bryant, 38 Ala.App. 127, 78 So.2d 821.

1. Code 1940, T. 13, § 477, provides: "Any party may appeal from any judgment rendered against him before a justice of the peace or court of like jurisdiction to the circuit court, or court of like jurisdiction, upon complying with the provisions of this chapter at any time within five days after the rendition thereof, unless otherwise provided in this Code."

Under the views of our Supreme Court in reversing and remanding our former judgment in this case, and under the authority of T. 13, § 184, supra, we conclude that the motion to quash the writ was not well taken. See Ex parte McDanal, 32 Ala.App. 445, 27 So.2d 504. Otherwise, we should have the anomaly of the local act superseding a general statute. This is undoubtedly a case where an appeal would lie from the law and equity court to the circuit court. § 9, Act No. 315, supra.

The setting for the second question is based on the trial judge's charging:

"My recollection of the rules of law applicable to goods and warehouses and merchandise, commodities, like you have here is where it is shipped on an open bill of lading, sold on credit, that a delivery of the property bought, by the seller to a common carrier, is a delivery to the purchaser. In this case the proof shows that it was an open shipment, no cash on delivery, I am not so familiar with the terms of that nature, didn't have to pay for it before he got it from the transportation company, open shipment, that was the nature and character of that shipment, and when that goods was delivered to a common carrier, D & D Transportation, it was delivered to the purchaser and the title of the property passed to the purchaser, the hardware company at Flomaton, Alabama. That is my recollection of the rules of law applicable. I believe we run across a decision applicable. Under those conditions, I would think that the defendant would be entitled to an affirmative charge, in that state of the pleadings. * * *"

■ The rights of the parties come under the Carmack Amendment to the Interstate Commerce Act and the Federal Bills of Lading Act (49 U.S.C.A. § 20(11), and §§ 81–124). Chesapeake & O. Ry. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75

L.Ed. 983; Illinois Steel Co. v. Baltimore & O. R. Co., 320 U.S. 508, 64 S.Ct. 322, 88 L.Ed. 259; Chesapeake & O. Ry. Co. v. State National Bank, 280 Ky. 444, 133 S.W. 2d 511, 130 A.L.R. 1306; Surprise Furniture Co. v. Long Island R. Co., Sup., 107 N.Y.S.2d 316; White Cross Hospital v. Chesapeake & O. Ry. Co., Ohio App., 125 N.E.2d 363.

Our State Bills of Lading Act, Code 1940, T. 48, §§ 356–397, expressly yields so as not to "unlawfully affect interstate commerce."

Jurisdiction of state courts is concurrent. Galveston H & S A Ry. Co. v. Wallace, 223 U.S. 481, 32 S.Ct. 205, 56 L.Ed. 516 (liability of initial carrier under Carmack Amendment to Interstate Commerce Act); see also Walker v. Jones, 33 Ala.App. 348, 34 So.2d 608.

49 U.S.C.A. § 102 (§ 22 of the Federal Bills of Lading Act), provides (as does Code 1940, T. 48, § 377) in part:

"If a bill of lading has been issued * * * the carrier shall be liable to (a) the owner of goods covered by a straight bill subject to existing right of stoppage in transitu * * *"

49 U.S.C.A. § 88 (§ 8 of the Federal Act, cf. Code 1940, T. 48, § 363), imposes a duty of delivering the goods to the consignee upon demand unless a "lawful excuse" intervenes.

■ 49 U.S.C.A. § 82 (cf. Code 1940, T. 48, § 357), defines a straight bill as one: " * * * in which it is stated that the goods are consigned * * * to a specified person * * *"

Consignment to "Watson Hardware Co. Inc." made the instant document a straight bill.

Under § 88, supra, Dean was, in the absence of some lawful excuse, bound to deliver to Watson Hardware Co., the consignee. There is dictum in McDowell Associates Inc. v. Pennsylvania R.R., D.C.,

151 F.Supp. 894, 897, based on 49 U.S.C.A. § 20(11), which does not take into account this effect of the Federal Bills of Lading Act. However, the court pointed out that the consignees had assigned their claims for cargo damage to McDowell which put McDowell in their shoes.

Pennsylvania R. Co. v. Olivit Bros., 243 U.S. 574, 37 S.Ct. 468, 61 L.Ed. 908 (which arose before the Bills of Lading Act took effect) was an action brought by a consignee who was also the consignor. See Carr v. Pennsylvania R. Co., 88 N.J.L. 235, 96 A. 588; Olivit Bros. v. Pennsylvania R. Co., 88 N.J.L. 376, 96 A. 589.

In L. E. Fosgate Co. v. Atlantic Coast Line R., 263 Mass. 192, 160 N.E. 783, the Fosgate firm (which had received oranges consigned by W. E. Lee & Co. to the Lee firm) was not entitled to maintain an action because it was not "direct obligee" of the carrier under the Carmack Amendment. The opinion harmonizes the Carmack Amendment and the Bills of Lading Act.

In our cases of Southern Ry. Co. v. Jones Cotton Co., 167 Ala. 575, 52 So. 899, and Gulf Compress Co. v. Jones Cotton Co., 172 Ala. 645, 55 So. 206, the cotton was shipped subject to draft; the suit was for an accounting; and the court did not go into the Federal statutes.

Dearborn Stove has here shipped on a "straight," i. e., nonnegotiable bill of lading; and, hence, title passed to the hardware company on delivery to Dean for carriage, at least as far as Dean was concerned.

At Elliott, Railroads (3rd Ed.), § 2146, at pp. 522–523, we find:

"If there is no reservation by the shipper the title presumptively rests in the consignee * * *"

See also Estherville Produce Co. v. Chicago, R. I. & P. R. Co., 8 Cir., 57 F.2d 50.

We have experienced difficulty with the opinion in Alabama Great Southern R. Co. v. Lawler, 213 Ala. 119, 104 So. 412, cited in 13 C.J.S. Carriers § 249(1) (Holder of Bill of Lading), as authority for:

"* * * It has been held that, since a bill of lading is not an instrument for 'the payment of money' within a statute requiring actions on such instruments to be prosecuted in the name of the real party in interest, an action ex contractu on a bill of lading for the loss of the goods cannot be maintained by the owner of the goods who is not in possession of the bill, but should be brought in the name of the consignor for the use of such owner. * * *"

However, an examination of the pleadings and the facts in the Lawler case show that it is not a controlling precedent here. First and foremost, Mrs. Lawler was neither consignor nor consignee, hence not in privity with the carrier so far as the record stood on demurrer; nor did she allege that she was the holder of an "order" bill of lading. Moreover, the opinion, while clearly disclosing an interstate shipment, does not treat of the effect of the Carmack Amendment.

An intrastate shipment was of concern in Louisville & N. R. Co. v. Sarris, 209 Ala. 217, 95 So. 903. There, as in Nashville, C. & St. L. Ry. v. Abramson-Boone Produce Co., 199 Ala. 271, 74 So. 350, the consignor made himself consignee and then sold the goods by drawing on the purchaser with the bill of lading endorsed and attached to the draft. In Sarris' case, it was held that, since the complaint alleged delivery to Sarris, it was error to admit the bill of lading since Sarris' name did not appear thereon.

In the Abramson-Boone case, the consignor-consignee sued for the use and benefit of the purchaser. In Southern Ry. Co. v. Northwestern Fruit Exchange, 210 Ala.

519, 98 So. 382, 386, wherein Dilling was consignor, the court, per Miller J. said:

"The legal title to the apples was in the consignee Northwestern Fruit Exchange, and the real purchaser was Stamps & Co. The bill of lading was transferred to Stamps & Co. with draft attached for the purchase price, drawn by the consignee on them. The title to the apples passed to Stamps & Co. when the draft was paid, with bill of lading attached. Stamps & Co. had ordered the apples from the consignee; they had a conditional interest in the apples, which did not ripen into a perfect title until the purchase price draft was paid by them. The apples were damaged before the draft was paid by and before the apples were delivered to them. Under such circumstances, a suit for damages to the apples, arising before the payment of the draft, may be maintained in the name of the Northwestern Fruit Exchange, the consignee, for the use and benefit of John T. Morgan, doing business under the name of Stamps & Co., the real purchaser, against the carriers, the defendant. * * *"

From Clark v. Louisville & N. R. R. Co., 216 Ala. 637, 114 So. 295, 297, we quote:

"It is recognized as the general rule 'that prima facie a bill of lading operates [as] a transfer to the consignee of the title to the goods shipped; and in the absence of evidence removing the presumption, an action against the carrier for failure to deliver, or for * * * loss or injury to the goods while in his possession, will lie only at the suit of the consignee.' Louisville & N. R. Co. v. Allgood, 113 Ala. 163, 20 So. 986."

In Lawrence v. Minturn, 17 How. 100, 15 L.Ed. 58, Minturn had libelled the ship Hornet for the nondelivery of two steam boilers taken on board as deck cargo at New York for delivery to him at San Francisco, perils of sea, fire and collision only excepted. As to the right of the libellant to institute the action, the court stated the respondents had the burden of proof "to displace the *prima facie* right of action of the consignee arising from the bill of lading." 17 How. at page 108.

In the annotation, 36 L.R.A., N.S., 68, at page 69, we find:

"Ordinarily the owner of the goods, whether consignor, consignee, or a third person, should bring suit against the carrier for injury thereto during transit. When there is no proof of ownership, and the goods are consigned by general consignment, without limitation or reservation of any right therein for the benefit of the consignor or a third person, the consignee is presumed to be the owner, and hence to be the proper party to sue the carrier for any injury. This presumption of ownership resulting from an unqualified assignment is however, not conclusive, but may be rebutted."—citing among others Ezell v. English, 6 Port. 311; Southern Express Co. v. Armstead, 50 Ala. 350; Robinson v. Pogue, 86 Ala. 257, 5 So. 685; Louisville & N. R. Co. v. Allgood, 113 Ala. 163, 20 So. 986; Southern Ry. Co. v. Jones Cotton Co., supra; Walter v. Alabama Great Southern Ry. Co., 142 Ala. 474, 39 So. 87.

As expressive of the law merchant, we find:

"The consignee of goods has a right to sue for their loss by the carrier, notwithstanding another party may be the owner of them. The obligation is to deliver to him. Generally, the property vests in him by the mere delivery to the carrier. Although the absolute or general owner of personal property may support an action for any injury thereto, if he have the right of immediate possession, this does not necessarily divest the right of the consignee to sue,

notwithstanding he has never had the actual possession. * * *"—Southern Express Co. v. Armstead, supra. See also Lawrence v. Minturn, supra; Annotation 135 A.L.R. 456.

Here Dearborn Stove adduce no evidence to rebut the presumption that the consignee, Watson Hardware Company was the owner of the goods upon delivery to Dean. Moreover, there was also no evidence to support any theory which would have supported Dearborn Stove's proferred amendment of the complaint to make Dearborn Stove the nominal plaintiff for the use and benefit of Watson Hardware Company. There was no evidence of any assignment, authorization or obligation so to do.

■ Moreover, to amend from Dearborn to "Dearborn for the use of Watson" would, under Code 1940, T. 7, § 127, work a complete change of parties plaintiff. Southern Ry. Co. v. Brewster, 9 Ala.App. 597, 63 So. 790, was merely amending from equitable to legal owner to correct by adding the nominal party.

When the trial judge stated he was giving the affirmative charge for the defendant on the original complaint, Dearborn Stove sought to amend by substituting as plaintiff Dearborn Stove Company, suing for the use and benefit of Watson Hardware Company, Inc. This amendment was disallowed, we think correctly.

Code 1940, T. 7, § 239, permits amendments pending trial but does not authorize a complete change of parties. This proposed amendment would have worked such a change. Vinegar Bend Lumber Co. v. Chicago Title & Trust Co., 131 Ala. 411, 30 So. 776.

Moreover, there was no evidence which would have supported a judgment in favor of the substituted plaintiff.

The judgment below is due to be

Affirmed.